Submitted on record and briefs March 25, affirmed August 4, 1993

## STATE OF OREGON,
*Appellant,*

*v.*

## ARTHUR G. RUSSELL, JR.,
*Respondent.*

(91-3001-C-1; CA A74523)

857 P2d 220

Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, Salem, filed the brief for appellant.

Carl Caplan, Medford, filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

Rossman, P. J., dissenting.

## LEESON, J.

The state appeals the trial court's order suppressing evidence seized during execution of a search warrant. The trial court ruled that the supporting affidavit did not establish probable cause. We affirm.

The affiant is a detective with the Jackson County Narcotics Enforcement Team (JACNET). His affidavit states that in August, 1991, JACNET received an anonymous letter urging officers to "go to 872 Old Trail Creek road [*sic*] in the town of Trail and you will find 25, 50 or more pot plants being grown there in the barn." Later that month, JACNET received a second anonymous letter that stated:

> "I am writing this letter because I don't think these people should continue to do what they are doing. For the past couple of years these people[, defendant and his wife,] who live in Trail, at 872 Old Trail Creek road [*sic*] have been growing marijuana at their residence. He is a carpenter, and part of his shop is used to grow marijuana. It is completely enclosed and looks like part of his shop, only the roof where he grows the marijuana has a white plastic roof. Please don't waste time about this matter. Sincerely, a Concerned Citizen."

The affiant investigated the tips for the next several weeks. He went to the address provided by the informant, where he saw a house and several outbuildings, including a shed. The shed had a door at the north end, a large vent fan on the south wall, and no windows. On one occasion, the affiant observed a white male going in and out of an open door at the north end of the shed.

The affiant knew from his training and experience that to grow marijuana in the shed during the summer, the shed would have to be cooled. He had previously seen vent fans like the one on the south wall used to cool sheds where marijuana was being grown. On two occasions, a named officer assisting the affiant with the investigation observed sprinklers running on the roof of the shed. The affiant believed that the purpose of the sprinklers was to help cool the shed.

The affiant drove by defendant's house and shed on several evenings between 8:30 and 9:30 p.m. He knew from

his training and experience that indoor marijuana growing operations use bright lights to simulate the growing season, and that it is common to leave the lights on 18 hours a day. On some of those evenings, he saw a bright light shining through a gap in the shed wall near the vent fan. At those same times, the lights and a television were on in the house, and the shed door was closed. The affiant believed that anyone working in the shed would have opened the shed door, because it was hot outside.

The affiant also obtained defendant's electric utility records. Defendant's house is 676 square feet and does not use electric heat. His average monthly bill was $109. The bills for April and May, 1991, were $123 and $184, respectively. A representative of the utility company told the affiant that an average 1500 square foot house without electric heat would have monthly electric bills of about $47 to $48. The affiant associated high electric bills with indoor marijuana growing operations.

The utility records also showed that defendant had arranged to read his own electric meter. The affiant further noted that defendant kept an aggressive dog. The affiant suspected that defendant wanted to prevent anyone from getting close enough to the shed to be able to smell marijuana.

As part of his investigation, the affiant observed defendant's shed with the assistance of a Thermal Imaging Device (TID). A TID is temperature sensitive, and is used like a telescope. Viewed through a TID, relatively colder objects appear darker, and relatively warmer objects appear redder. The affiant had previously had a TID demonstrated to him, and had used one during a successful investigation of an indoor marijuana growing operation. He knew that marijuana growing operations generate a lot of heat. Viewed through the TID, the walls of defendant's shed appeared warmer than a nearby Quonset hut.[1] Additionally, the tops of the shed walls appeared to be warmer than the lower parts of the walls. Three other nearby buildings on which the affiant used the TID — another shed, a residence, and an auto repair

---

[1] A Quonset hut is a prefabricated metal structure shaped like a half cylinder laid on its flat side.

shop—did not register warmer at the top of the walls than at the lower parts.

The magistrate to whom the affiant presented the affidavit issued the requested search warrant. The warrant was executed and marijuana was found growing in defendant's shed. He was charged with two counts each of possession of a controlled substance, ORS 475.992(4), and manufacture of a controlled substance. ORS 475.992(1). Defendant moved to suppress the evidence seized during execution of the warrant on the ground that the supporting affidavit did not show probable cause. The trial court granted the motion.

■■     A magistrate is authorized to issue a search warrant if the application is supported by probable cause. ORS 133.555(2). Probable cause exists if the facts in the record presented to the magistrate would lead a reasonable person to believe that seizable things probably will be found in the place to be searched. *State v. Moylett*, 313 Or 540, 836 P2d 1329 (1992). Our review, like that of the trial court, is to determine whether a neutral and detached magistrate could have concluded that there was probable cause to search defendant's shed. *State v. Villagran*, 294 Or 404, 657 P2d 1223 (1983).

Defendant contends that the anonymous tips received by JACNET must be disregarded, because the affidavit does not show the informant's basis of knowledge. He also contends that use of the TID constituted an unconstitutional search, and that the state may not rely on the information illegally obtained in that search.

■     We first consider whether it was proper to consider the anonymous tips contained in the affidavit. As explained below, we conclude that it was not. We then decide whether the affidavit is supported by probable cause without the TID information. If it is not, then we must decide whether the TID information would create probable cause. Only if the TID information would be essential to a finding of probable cause will we consider defendant's constitutional challenge to its use. *See, e.g., State v. Carter/Grant*, 316 Or 6, 848 P2d 599 (1993).

■    When an affidavit relates the declarations of an unnamed informant, as here, it must set forth (1) the informant's basis of knowledge, and (2) facts showing the informant's veracity. *State v. Carlile*, 290 Or 161, 164, 619 P2d 1280 (1980). If it does not, those declarations must be disregarded. *State v. McBride*, 96 Or App 268, 274, 773 P2d 379, *rev den* 308 Or 184 (1989).

■    Neither of the anonymous letters received by JACNET provided the informant's basis of knowledge. We confronted a virtually identical situation in *McBride*. The trial court in that case ruled that it would disregard the anonymous tip. It said:

> " '[N]o one here has any idea what the basis for that information was. And that is more important than being able to form an opinion as to the veracity of the informant. It may be that we have a person of impeccable veracity who, in good faith, passed this information along to the police but the information was picked up just as * * * gossip. * * * So the anonymous tip in this case really does nothing more than initiate the process of investigation. It doesn't add any probative value to the search warrant.' " 96 Or App at 274.

On appeal, we agreed "with the court's analysis and conclusions." 96 Or App at 274. They are equally applicable here. In this case, the affiant conceded that "I do not know the basis of knowledge of [the informant(s)]." We, therefore, must disregard the anonymous tips.

■    We next consider whether the remaining information in the affidavit, excluding that obtained by use of the TID, is sufficient to support a finding of probable cause. While high power usage is not alone sufficient to establish probable cause, it is an important factor to be considered. *State v. Prince*, 93 Or App 106, 113, 760 P2d 1356, *rev den* 307 Or 246 (1988). The additional information is: (1) the affiant observed a large vent fan on the shed wall, similar to ones he had previously seen used to cool sheds where marijuana was growing; (2) defendant ran a sprinkler on the roof of the shed, which the affiant believed had the effect of further cooling the shed; (3) on some evenings the affiant was able to see bright light escaping through a crack in the shed wall at times when the affiant had reason to believe that no one was in the shed;

and (4) defendant arranged to read his own electric meter and kept an aggressive dog.

Taking the unchallenged information as a whole, a magistrate could, perhaps, conjecture that defendant was growing something in his shed. However, we agree with the trial court that, from that information alone, a reasonable magistrate could not infer that defendant was *probably* growing marijuana. *See State v. Anspach*, 298 Or 375, 380-81, 692 P2d 602 (1984).

■ We next consider whether the affidavit establishes probable cause if the TID information is included, assuming that it was lawfully obtained. The affidavit states that the affiant had previously used TIDs, but not that he had any expertise in using them. The affiant noted that defendant's shed was warmer than a nearby Quonset hut. The affiant also noted that the walls of the shed were warmer near the top than at the bottom, unlike three other nearby buildings.

Even assuming that those comparisons could reasonably support an inference about defendant's use of his shed, the affidavit does not state whether the comparisons caused the affiant to believe that the shed was used to grow marijuana nor what conclusion, if any, the affiant drew from those comparisons. *See State v. Carter/Grant, supra,* 316 Or at 12-13. The information obtained by use of the TID, therefore, did not contribute to the state's probable cause to believe that defendant's shed was used to grow marijuana. Accordingly, we need not reach defendant's contention that the use of the TID was an unconstitutional search.

The affidavit did not provide probable cause to believe that the specified seizable items would be found in the places to be searched. The trial court did not err by suppressing the evidence seized during execution of the warrant.

Affirmed.

**ROSSMAN, P. J.,** dissenting.

Even assuming that the TID and the anonymous tips cannot properly be considered, I believe that the remaining information in the affidavit, taken as a whole, is sufficient to establish probable cause to believe that defendant was growing marijuana in his shed. Accordingly, I dissent.

The majority correctly frames the issue in this case as "whether a neutral and detached magistrate could have concluded that there was probable cause to search defendant's shed." 122 Or App at 265. In making that determination, we are to construe the affidavit supporting the warrant in a commonsensical, nontechnical and pragmatic fashion, "looking at the facts recited and the reasonable inferences that can be drawn from those." *State v. Prince*, 93 Or App 106, 112, 760 P2d 1356, *rev den* 307 Or 246 (1988). The majority's approach, which is reminiscent of a *de novo* type review, is contrary to the standard of review that should be employed:

> "An affidavit supporting a search warrant is tested by much less rigorous standards than govern the admissibility or weight of evidence at trial. After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. *The issuing magistrate's determination of probable cause should be paid great deference by a reviewing court, and the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants.*" *State v. Prince, supra*, 93 Or App at 112. (Emphasis supplied; citations omitted.)

*See also State v. Evans*, 110 Or App 46, 51, 822 P2d 1198 (1991); *State v. Gale/Rowden*, 105 Or App 489, 496, 805 P2d 158, *rev den* 311 Or 427 (1991); *State v. Howell*, 93 Or App 551, 557, 763 P2d 179 (1988), *rev den* 307 Or 405 (1989).

Excluding the anonymous tips and the information obtained by the TID, the affidavit disclosed the following facts:

> (1)   Defendant's monthly electric bills were 2-3 times higher than the average monthly bill for a similarly situated house more than twice the size of defendant's. We have previously noted the importance of abnormally high power consumption in assessing the possibility of the existence of a marijuana growing operation. *State v. Prince, supra*, 93 Or App at 113.

> (2)   The affiant observed a large vent fan on the shed wall, similar to fans he had previously seen cooling indoor marijuana growing operations. Based on his training and experience, the affiant knew that the fan would be necessary to cool the shed to allow the marijuana to grow.

(3)   Defendant also ran a sprinkler on the metal roof, which the affiant believed had the effect of further cooling the shed.

(4)   The affiant knew from training and experience that indoor marijuana growing operations used bright lights. Although the shed is windowless, sometimes late in the evening the affiant was able to see bright light escaping through a crack in the shed's wall at times when the affiant had reason to believe that the shed was unoccupied.

(5)   Defendant arranged to read his electric meter. The affiant believed that defendant read his meter to prevent others from getting close enough to the shed to detect the odor of the marijuana.

(6)   Defendant kept an aggressive dog.

I believe that this case boils down to nothing more than a simple arithmetic calculation:

> Extremely high power consumption
> + Large vent fan on shed wall
> + Sprinkler on the metal roof
> + Bright lights seen in the shed
> + Defendant arranging to read his own electric meter
> + Defendant keeping an aggressive dog
> _____
> = Probable Cause

It is irrelevant that there might have been an innocent explanation for every fact detailed in the affidavit. *See State v. McBride*, 96 Or App 268, 276-77, 773 P2d 379, *rev den* 308 Or 184 (1989); *State v. Prince, supra*, 93 Or App at 114. The facts, taken together, represent an overall pattern of activity that would permit a reasonable magistrate to conclude that defendant was probably growing marijuana in his shed. *See State v. Prince, supra*, 93 Or App at 114.

The affidavit also sets out the affiant's extensive training and experience in narcotics investigations, including his particular knowledge of growing and processing marijuana. That expertise is an important factor to be considered when evaluating the facts contained in the affidavit, because ''an act which might appear innocent to a lay person may be incriminating when viewed by a trained and experienced

police officer." *State v. Prince, supra,* 93 Or App at 113. The affiant's training and experience are particularly important in analyzing the power consumption information as well as the facts that there was a large vent fan on the shed wall, that a sprinkler ran on the metal roof, that bright lights were left on in the shed late in the evenings when the officer had reason to believe that no one was there and that defendant chose to read his own meter. *See State v. McBride, supra,* 96 Or App 268, 276-77; *State v. Prince, supra,* 93 Or App at 113.

After reviewing the unchallenged information set out in the affidavit, considering that information in light of the affiant's extensive training and experience in investigating marijuana cultivation and according due deference to the preference for searches pursuant to a warrant and to the original determination of the magistrate, I believe that our only viable option is to sustain the magistrate's finding of probable cause. Accordingly, I dissent.