Argued and submitted November 30, 1993, affirmed March 9, petition for review denied May 10, 1994 (319 Or 81)

STATE OF OREGON,
*Respondent,*

*v.*

GUILLERMO VINCENT APOLO,
*Appellant.*

(10-91-09952; CA A75847)

870 P2d 243

Diane L. Alessi, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant appeals his conviction for first degree theft. ORS 164.055. He contends that the trial court erred when it denied his motion to suppress evidence that was seized at his residence during the execution of a search warrant. We affirm.

The facts are not in dispute. Defendant owns two 1987 Mercedes Benz 560 SL automobiles, one silver and one gold. He obtained theft insurance for both vehicles through Allstate Insurance Company. Shortly thereafter, he reported to Allstate that the silver Mercedes had been stolen. Pursuant to company policy, Gary Ford, an Allstate claims adjuster, and Gary Redel, an investigator from the National Automobile Theft Bureau (NATB), went to defendant's home to verify certain information about the theft. As Redel walked past defendant's garage, he looked inside and saw a late model silver 560 SL Mercedes Benz. Although the license number did not match that of the car defendant had reported stolen, the car otherwise matched the description of the stolen vehicle. When defendant came to the front door, Ford told him that they were Allstate representatives and that they wanted to speak with him about his theft claim. They also asked permission to check the vehicle identification number (VIN) on the Mercedes in the garage to compare it with the VIN of the car defendant had reported stolen. Defendant told them that he had to leave immediately for an appointment and that there was not sufficient time for them to examine the car.

Redel and Ford then went to the auto shop that performed repair and maintenance work on defendant's vehicles. The shop owner informed them that defendant's gold Mercedes was parked in front of the shop and that it had been there for a year. The vehicle did not have a license plate. Ford and Redel searched the vehicle and discovered that the VINs for many of the component parts had been removed or obliterated. They contacted the Eugene Police Department, and Officer Stronach met them at the auto shop. They apprised Stronach of all the facts concerning defendant's theft claim and told him that they had searched the gold Mercedes and noticed that the VINs on several of its parts had been removed or destroyed. Stronach looked through the car's windshield

and, without opening any doors or using any visual enhancement device, observed the car's VIN. He ran an identification check and learned that the license plate that Redel had seen on defendant's silver Mercedes was registered to the gold Mercedes. Stronach impounded the gold Mercedes pursuant to ORS 819.440.[1]

Police conducted a warrantless search of the gold Mercedes several days later, while it was still impounded. The search confirmed that the VINs had been removed or obliterated from numerous parts, including the convertible top, the doors, the hood, the trunk lid and other interior components. The police then obtained a warrant to search defendant's residence and curtilage for "evidence of the crime of Attempted Aggravated Theft I to wit: [the silver Mercedes Benz] and documents, and receipts, pertinent to the purchase of stolen parts to reassemble said Mercedes Benz vehicle[.]" While executing the search warrant, the police discovered that the VIN on the silver Mercedes' convertible top had been tampered with and that the top had been stolen. Defendant admitted that he knew the top was stolen property and that he had defaced the VIN to make it more difficult to identify the true owner. The top was the evidence that formed the basis of defendant's conviction. Noting that this case was handed to the police on a "gold platter," the trial court denied defendant's motion to suppress the top.

Defendant assigns as error the trial court's denial of his motion to suppress. He argues that the seizure and subsequent police search of the gold Mercedes violated Article I, section 9, of the Oregon Constitution,[2] and that the information derived from that illegal conduct could not properly be relied on to supply probable cause for the search warrant. He also argues that, without that information, the affidavit supporting the search warrant does not establish probable cause. Therefore,

---

[1] ORS 819.440 provides, in part:

"When a police officer discovers a vehicle or component * * * from which the vehicle identification number assigned to the vehicle or component has been removed, defaced, covered, altered or destroyed the police officer may seize and hold it for identification and disposal[.]"

[2] Defendant does not claim that the search of the gold Mercedes conducted by Redel and Ford contravened Article I, section 9.

defendant reasons, no valid warrant supported the search of the silver Mercedes, and the convertible top was seized unlawfully.

■■ A magistrate is authorized to issue a search warrant if the application is sufficient to establish probable cause. ORS 133.555(2); *State v. Russell*, 122 Or App 261, 265, 857 P2d 220 (1993). Probable cause exists if the magistrate could reasonably conclude that seizable things probably will be found in the place to be searched. *State v. Chezem*, 125 Or App 341, 345, 865 P2d 1307 (1993). We first consider whether the affidavit supporting the search warrant established probable cause without the information obtained from the police seizure and search of the gold Mercedes. Only if that information is necessary to a finding of probable cause will we address defendant's constitutional challenge to its use. *See, e.g., State v. Russell, supra*, 122 Or App at 265.

■ Excising the evidence garnered from the police seizure and search of the gold Mercedes, the affidavit disclosed these pertinent facts:

(1) The affiant has been a member of the Eugene police force for 22 years and has spent the last seven years as an auto theft investigator. He has investigated numerous cases involving the theft, disassembly, reconstruction and sale of stolen vehicles and their component parts.

(2) In 1988 defendant reported a Mercedes Benz had been stolen. That vehicle was never recovered.

(3) When Redel and Ford went to defendant's home to discuss his theft claim, they saw a late model 560 SL Mercedes Benz in the garage with a license plate that read RZU537. Defendant refused them permission to check the VIN to determine if the vehicle was one of the two Mercedes that defendant had insured through Allstate.

(4) Redel and Ford proceeded to the auto shop where defendant took his cars for repair work. The owner informed them that defendant's gold Mercedes was parked in front of the shop and that it had been there for approximately one year. They searched the gold Mercedes and discovered that the VINs on many of its component parts had been removed or defaced.

(5) The license plate that Redel and Ford saw on the silver Mercedes in defendant's garage was registered to the gold Mercedes at the auto shop.

(6)    Both the silver and the gold Mercedes previously had been stolen and recovered in Southern California. The vehicles had been stripped of several of their component parts.

(7)    Defendant told the affiant that both Mercedes had been rebuilt with parts purchased through a trade paper known as "The Recycler." Redel recognized this publication as a means utilized by auto thieves to dispose of stolen parts.

(8)    In conversations with defendant's attorney, defendant's attorney told the affiant that he was " 'not inclined to allow an examination' of the [silver Mercedes] on the basis that stolen parts might be on the vehicle and it would be subsequently seized."

(9)    The bill of sale for the silver Mercedes, dated July 12, 1990, that defendant submitted to Allstate listed a sale price of $38,000. Defendant gave the affiant a bill of sale for the silver Mercedes, dated July 12, 1990, that listed a sale price of $18,000. The affiant believed that defendant intentionally inflated the purchase price on the bill of sale given to Allstate so that he would receive a greater payout in the event of theft.

After reviewing the unchallenged information set out in the affidavit, we conclude that it provides probable cause to believe that the specified items were seizable and would be found in the places to be searched. We therefore hold that the warrant search of the silver Mercedes was valid and that the convertible top was properly seized. The trial court did not err in denying defendant's motion to suppress the convertible top.[3]

Affirmed.

---

[3] Because of this holding, it is not necessary to decide whether the police seizure and search of the gold Mercedes impermissibly intruded on defendant's privacy rights under Article I, section 9.