Argued and submitted February 4, reversed and remanded June 29, petition for review denied October 25, 1994 (320 Or 325)

STATE OF OREGON,
*Appellant,*

*v.*

HOWARD D. BINNER,
*Respondent.*

(92-04-1789C; CA A77903 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

LORETTA R. WALKER,
*Respondent.*

(92-04-1789C2; CA A77904)

STATE OF OREGON,
*Appellant,*

*v.*

MICHAEL I. WALKER,
*Respondent.*

(92-04-1789C3; CA A77905)

STATE OF OREGON,
*Appellant,*

*v.*

LORETTA R. WALKER,
*Respondent.*

(92-05-1790C; CA A77906)
(Cases Consolidated)

877 P2d 642

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Peter Gartlan, Deputy Public Defender, argued the cause for respondents Michael I. Walker and Loretta R. Walker. With him on the brief was Sally L. Avera, Public Defender.

Ralph H. Smith, Jr., argued the cause for respondent Howard D. Binner. On the brief were Duane J. McCabe and Smith McCabe and Costello.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendants Loretta Walker, Howard Binner and Michael Walker were indicted for unlawful possession and manufacture of a controlled substance. ORS 475.992(1), (4)(a). Loretta also was indicted for first degree child neglect. ORS 163.547. The state appeals from a pretrial order that suppressed evidence seized during the warrant search of Loretta's house and evidence seized during an ensuing search of a trailer, which was conducted pursuant to her consent. In cross-assignments of error, defendants challenge various intermediate rulings by the trial court.

The affidavit in support of the warrant for Loretta's house contained information from an unnamed informant that Loretta was cultivating marijuana in the attic of her house, as well as information regarding the amount of heat emanating from the house. The latter information was obtained by Sergeant Ken Hauge of the Oregon National Guard through the use of a Thermal Imaging Device (TID). The trial court first determined that the information provided by the informant was reliable and could be used in determining whether the affidavit established probable cause. However, the court declared the warrant search of Loretta's house invalid on the ground that the use of the TID to detect the amount of heat emanating from the house was a "search" within the meaning of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, and that the "search" was unconstitutional both because it was unaccompanied by a warrant and because the use of the Oregon National Guard was an unauthorized use of military personnel by the police to enforce the civil laws. Or Const, Art I, § 27.[1]

The trial court also suppressed the evidence seized during the subsequent consent search of the trailer. Although

---

[1] Article I, section 27, embodies the longstanding principle that the military should be kept separate from, and strictly subordinate to, civil authorities. ORS 399.065(1) authorizes the Governor, "in case of invasion, disaster, insurrection, riot, breach of the peace, or imminent danger thereof," to order the military into active service of the state, "for such period, to such extent and in such manner as the Governor may deem necessary[.]" Because the Governor had not issued a formal order calling the National Guard to conduct counter drug support activities, the trial court held that Hauge's involvement in the police investigation was not authorized under ORS 399.065(1). Given our disposition of this case, we need not decide whether that holding was in error.

it concluded that Loretta's consent was voluntary, it reasoned that the officers had obtained consent to search the trailer by exploiting evidence seized unlawfully during the search of the house.

On appeal, the state assigns error to the court's order suppressing the evidence seized during the searches. It contends that, even if the use of the TID constituted an illegal search, the appropriate remedy was to excise the TID information from the affidavit and to evaluate the affidavit based on the remaining information. Even when the TID information is excised, the state argues, the affidavit establishes probable cause. The state also maintains that the consent search of the trailer was valid. In their cross-assignments of error, defendants argue that the court erred in concluding that the information provided by the unnamed informant could be considered in making the probable cause determination and in holding that Loretta's consent to the search of the trailer was voluntary. We agree with the state on its assignment, disagree with defendants on their cross-assignments and reverse.

The facts are not in dispute. Peter Revak, a detective with the Harney County Sheriff's Office, obtained a warrant to search Loretta's home for evidence of the crimes of possession, delivery and/or manufacture of marijuana. In the affidavit, Revak states that, on April 6, 1992, Harney County Sheriff David Gerup told him that an unnamed informant had seen a hydroponic marijuana grow operation in the attic of Loretta's house. According to the informant, the crop consisted of twenty mature marijuana plants, approximately three and a half to four feet high and three feet in diameter, which were beginning to bud. The informant said that artificial sunlight was provided by a "grow light" attached to a chain that traveled over the tops of the plants, that the attic walls were covered with tin foil to reflect all light back to the plants and that the window in the attic was sealed to block light from escaping. The informant also reported that the plants were moistened by an automatic watering system. The informant gave the address of Loretta's house as 615 East Riverside Drive, Burns, Oregon, and described Loretta as a divorced woman with two young children. The informant further reported that a man named Howard from Portland,

whom the informant described as short, middle aged and balding, had set up the grow operation. Howard told the informant that he had several grows in the Portland area and that he cultivated marijuana at other people's homes and divided the product with the home owners. According to the informant, Howard planned to harvest these marijuana plants either on the weekend of April 11th or the weekend of April 18th, depending on the maturity of the buds.

Revak investigated the tip for the next several days. He verified from Harney County public records that Loretta lived at 615 East Riverside Drive in a two-level house with a small unimproved attic and that she is a divorced woman with two young children. He also obtained Loretta's telephone records and discovered that she had made several calls during the previous three months to defendant Howard Binner in Portland. Information obtained from the Department of Motor Vehicles disclosed that Binner matched the informant's description of "Howard." Binner's telephone records showed that he had made approximately 45 telephone calls to Loretta over the previous four and a half months. His records also showed that he frequently placed calls to Vickie Goodman in Vancouver, Washington. After running a records check on Goodman, Revak discovered that she had an extensive criminal record of drug offenses, including the manufacture and delivery of marijuana.

On April 6, Revak drove by Loretta's house at different times and saw that the window to the attic was covered and that no light escaped from the window at night. At 2 a.m. on April 8, Revak and Hauge personally observed Loretta's home. Hauge, an expert trained in the use of thermal imaging equipment, viewed the house through a TID and reported that the attic area radiated an unusually large amount of heat. Revak knew from his training and experience that marijuana growing operations generate a substantial amount of heat.

The magistrate to whom Revak presented the affidavit issued the requested warrant on April 14. When the warrant was executed later that day, Loretta was the only defendant present. The officers searched the house, including the attic, and found a small amount of marijuana and various items of equipment that could have been used in a marijuana

grow operation. They did not find any marijuana plants, however. Approximately 30 minutes after the warrant was executed, Revak and one of the officers involved in the search returned to Loretta's house. Neither of the other two defendants was present. Revak read her the search warrant and advised her of her *Miranda* rights. She signed a *Miranda* form acknowledging receipt of the warnings. He then began to question her about the suspected marijuana growing operation in her attic. Initially, she denied cultivating marijuana plants and claimed to have been growing only tomatoes in the attic. Revak testified that he "knew she was lying to me." He told her that the officers had found some marijuana during the search of her house. He also told her that he would report her to Children's Services Division (CSD) if she refused to cooperate with him. Eventually, she confessed that she had moved the marijuana plants to "a friend's" trailer and agreed to take Revak and the other officer there. Upon arrival, Loretta gave the officers permission to enter the trailer and search it. They discovered a garbage bag full of marijuana.

■ In *State v. Apolo*, 126 Or App 652, 656, 870 P2d 243, *rev den* 319 Or 81 (1994), we reiterated the general rule that

> "[a] magistrate is authorized to issue a search warrant if the application is sufficient to establish probable cause. Probable cause exists if the magistrate could reasonably conclude that seizable things probably will be found in the place to be searched." (Citations omitted.)

Our review is limited to determining whether, on the basis of the information contained in the application for the warrant, a neutral and detached magistrate could have concluded that there was probable cause to believe that Loretta was growing marijuana in her home. *State v. Russell*, 122 Or App 261, 265, 857 P2d 220 (1993).

■ It is apparent from the suppression order that the trial court was especially disturbed by Revak's and Hauge's use of the TID and, in particular, by Hauge's participation in the police investigation. Assuming, *arguendo*, that Revak's and Hauge's conduct transgressed constitutional standards, that fact alone did not justify the court declaring the entire warrant search of Loretta's house invalid. That an application for a warrant contains some information that was obtained in violation of a defendant's constitutional rights

does not compel the conclusion that the search conducted pursuant to that warrant was invalid. When an application includes constitutionally tainted information, the correct action is for the magistrate and reviewing court to excise from the application all such information and to determine whether the remaining information is sufficient to establish probable cause. *State v. Hitesman/Page*, 113 Or App 356, 359, 833 P2d 306, *rev den* 314 Or 574 (1992); *State v. Christiansen*, 78 Or App 594, 596-97, 717 P2d 649, *rev den* 301 Or 445 (1986); *State v. Wise*, 72 Or App 58, 63, 695 P2d 68 (1985). That is so whether the illegal police conduct that led to discovery of the tainted information was an inadvertent technical oversight or a blatant and deliberate disregard of an individual's basic liberties. Here, the trial court erred in suppressing the evidence seized during the search of Loretta's house solely on the ground that the TID information was obtained in violation of defendants' rights under Article I, section 9, and the Fourth Amendment. Having determined that the TID information was obtained impermissibly, the court should have reevaluated the affidavit without the benefit of that information. If the remaining information demonstrated probable cause, the search of the house should have been upheld.

 Considering the adequacy of the affidavit without the TID information, the first inquiry is whether it was proper for the magistrate to consider the information provided by the unnamed informant. *See, e.g., State v. Russell, supra*, 122 Or App at 265. ORS 133.545(4) provides:

"If an affidavit [submitted in support of a search warrant] is based in whole or part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."[2]

---

[2] ORS 135.545 is a codification of the former federal *Aguilar/Spinelli* test. Since the adoption of ORS 135.545, the United States Supreme Court has rejected the *Aguilar/Spinelli* test in favor of a less restrictive "totality of the circumstances" test. *See Illinois v. Gates*, 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983). Nevertheless, Oregon law still requires that a supporting affidavit contain information from an unnamed informant that meets the *Aguilar/Spinelli* test. An affidavit that is sufficient under Oregon law will necessarily satisfy the new federal standard. *State v. Strubhar/Jackson*, 82 Or App 560, 563, 728 P2d 928 (1986), *rev den* 302 Or 657 (1987).

When, as here, an affidavit relates the declarations of an unnamed informant, it must set forth (1) the informant's basis of knowledge, and (2) facts showing the informant's veracity. *State v. Russell, supra,* 122 Or App at 266. Veracity of an unnamed informant may be established by facts showing that the information from the informant is reliable. *State v. Alvarez,* 308 Or 143, 147, 776 P2d 1283 (1989); *State v. Montigue,* 288 Or 359, 362, 605 P2d 656 (1980); *State v. Dunning,* 81 Or App 296, 302, 724 P2d 924 (1986). Police corroboration of information supplied by an informant establishes the informant's reliability and permits an inference that other information supplied by that informant is also reliable. *State v. Wilson,* 120 Or App 382, 388, 852 P2d 910 (1993); *State v. Hoffer,* 114 Or App 508, 512, 835 P2d 959 (1992).[3]

■　　Here, defendants argue only that the affidavit does not establish the informant's veracity. There is nothing on the face of the affidavit that required the magistrate to discredit the informant and there is no evidence either that the informant had something to gain from supplying the information or that Gerup had promised something to the informant to prompt the decision to inform. Those facts are appropriate considerations in establishing the informant's veracity. *See State v. Christiansen, supra,* 78 Or App at 600. The informant's ability to describe the grow operation in extreme detail also engenders indicia of reliability.[4] In addition, Revak was able to verify independently several of the

---

[3] The affidavit contains double hearsay. The first layer of hearsay is what Gerup related to Revak and the next layer is what the unnamed informant told Gerup. Ordinarily, each layer of hearsay must be tested to determine whether it may be used in the probable cause determination. *See State v. Farrar,* 309 Or 132, 786 P2d 161 (1990); *State v. Cotter/Ray,* 125 Or App 211, 864 P2d 875 (1993); *State v. Brotherton,* 123 Or App 243, 859 P2d 565 (1993); *State v. Young,* 108 Or App 196, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992). Here, however, defendants challenge only the adequacy of the information provided to Gerup by the unnamed informant. Thus, we need not examine the information relayed by Gerup to Revak, even assuming that it would be appropriate to test the sufficiency of information provided by a fellow police officer.

[4] Defendants' attempt to impugn the informant's veracity based on the informant's ability to recognize and describe in detail the grow operation is not well taken. That a person is able to identify a marijuana "grow" as such and describe the quality of the plants and the procedure by which the plants are cultivated does not, without more, raise an inference that the person is part of the "criminal milieu," thereby casting doubt on the person's credibility.

facts recited by the informant. The affidavit states that Revak confirmed that Loretta was divorced and that she lived in Burns at 615 East Riverside Drive with her two young children; that the house had an unimproved attic and that the window to the attic was covered; that Loretta had an ongoing relationship with Howard Binner, a man who lived in Portland and matched the informant's physical description of "Howard;" and that Binner had repeatedly contacted a convicted drug trafficker who lived in the Portland metropolitan area. That some of the corroborated details concern non-incriminating facts does not adversely affect their worth for establishing the informant's veracity. *See State v. Strance*, 118 Or App 645, 650, 848 P2d 1226 (1993); *State v. Dunning*, *supra*, 81 Or App at 302. As we said in *State v. Hermach*, 53 Or App 412, 420, 632 P2d 466, *rev den* 291 Or 893 (1981):

> "Police corroboration that does not directly relate to the circumstances establishing probable cause is as demonstrative of 'present good performance' and as relevant to establishing the informant's veracity as is corroboration of the criminal activity itself."

Revak's substantial corroboration of detailed and private information, coupled with the informant's apparent disinterestedness, permitted the magistrate to properly credit the information supplied by the informant. That information enabled the magistrate to reasonably conclude that evidence of marijuana cultivation would likely be found in Loretta's house. Accordingly, the search warrant was valid, and defendants' motion to suppress the evidence seized during execution of the warrant should have been denied. Because the information obtained by Hauge's use of the TID is not essential to a finding of probable cause, we need not decide whether use of the TID or Hauge's involvement in the police investigation was impermissible. *See, e.g., State v. Apolo, supra*, 126 Or App at 656-57 n 3; *State v. Russell*, *supra*, 122 Or App at 265.[5]

---

[5] The affidavit also states that Revak saw two dome-like vents located near the peak of the roof of Loretta's house that were exhibiting bright light and that the light emitting from one of the vents had "a bright and dimming effect * * * consistent with a grow light traveling back and forth on a chain as it nears and distances from the vent." The trial court determined that Revak had actually observed a street light reflecting off the vents and that no light was emitted from the vents at any time during the observations. Based on *State v. Esplin*, 314 Or 296, 839 P2d 211 (1992), the court held that those observations, although erroneous, could be considered for

■ We next turn to the trailer search, which was based on Loretta's consent.[6] The trial court concluded that Loretta's consent was voluntary, but suppressed the marijuana seized from the trailer on the ground that Revak obtained the consent by trading on evidence that was seized during the unlawful search of the house. However, because we have concluded that the search of the house was not illegal, there was no illegal conduct for Revak to exploit. Although we are not bound by the trial court's legal conclusion that defendant's consent was voluntary, we believe that, on this record, the court's conclusion was correct. In light of our holding, we need not address the state's claim that defendants Binner and Michael Walker lacked standing to contest the legality of the searches of the house and trailer.

Reversed and remanded.

---

corroboration purposes as well as for establishing probable cause, because they were objectively reasonable and were made in good faith. Because we do not rely on those observations in making the probable cause determination or for the purposes of corroboration, we need not address defendants' contention that that ruling was in error.

[6] Defendants do not argue that Loretta lacked authority to consent to a search of the trailer.