# STATE OF OREGON,
*Respondent,*

*v.*

# ROBBIE DEAN STRAILEY,
*Appellant.*

(92-3296-C-3; CA A80692)

883 P2d 901

David G. Terry argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and Leeson and Haselton, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant appeals his convictions for manufacture and possession of a controlled substance, marijuana. ORS 475.992. He argues that the trial court erred in denying his motion to suppress evidence seized during execution of a search warrant of his residence. We affirm.

The sole issue in this case is whether the affidavit supporting the search warrant for defendant's residence established probable cause to believe that seizable items would be found there. The affidavit in this case contained the following information. On April 2, 1992, the affiant, a special agent for the United States Bureau of Land Management (BLM), responded to a report of possible illegal barrel dumping on BLM administered land. Upon arriving at the site of the alleged dumping, the affiant observed three distinct groupings of 55-gallon plastic barrels and several one-gallon plastic buckets. Some of the barrels and buckets contained water. Affiant also saw evidence of digging, as if someone were preparing the ground for planting, and evidence that water had been removed from a nearby creek bed. Based on her training and experience, the affiant suspected that the area was being prepared as a future marijuana cultivation site.

On May 29, 1992, affiant returned to the site and found six marijuana plants growing near one of the barrel groupings. The plants ranged in height from eight inches to one foot, and were growing in a clustered configuration commonly referred to as "trapline cultivation." It appeared that the watering was being done by hand, using the nearby barrels. Law enforcement officers checked the site intermittently during the first three weeks of August. Although they discovered two additional plants, they were unable to ascertain who owned and tended the plants. On September 22, 1992, two BLM rangers positioned a surveillance camera on the property and aimed it at the barrel grouping closest to the six plants. The camera was set to photograph when activated by a heat-sensitive infra-red transmitter placed near the barrels. On the morning of September 25, the affiant, a BLM ranger and two police officers returned to remove the camera. Upon entering the site, they noticed that "six of the plants

had been harvested with only two growing plants remaining," and that the camera had taken 18 exposures. As they were driving from the site, they met a white male driving a red Chevrolet pickup truck with license number QSE153. Because of the narrow roadway, the speed of both vehicles while passing was reduced to two or three miles per hour. One of the officers, Ross, exchanged greetings with the driver of the pickup as it passed. Ross described the driver as a white male with a pale complexion and black hair parted on the left, exposing his forehead.

Later that day, Ross and the affiant reviewed the prints that had been taken by the surveillance camera. Twelve of the exposures showed a white male in various stages of removing water from the plastic barrels. The barrels were located approximately 25 feet[1] from the marijuana plants that were harvested. Both the affiant and Ross recognized the person in the photographs as the individual they had seen driving the red pickup truck. A vehicle registration check revealed that the pickup truck was owned by defendant and provided defendant's home address. Defendant's home was located two tenths of a mile away from the marijuana grow site.

The affidavit also detailed the affiant's extensive education, training and expertise in narcotics investigation. The affiant stated in the affidavit that she knew, based on her experience, that marijuana growers often keep in their homes growing marijuana plants and paraphernalia that is used for processing the harvested marijuana.[2]

---

[1] The affidavit stated that the distance between the plants and the barrels was 25 feet. Testimony at the suppression hearing indicated that the distance was 25 yards. This discrepancy is not relevant to our decision. Because we are concerned only with the sufficiency of the affidavit, we will refer to the distance as 25 feet.

[2] The affiant stated

"[t]hat I know, based on my training and experience as a law enforcement officer, that miscellaneous equipment and paraphernalia such as 1,000 watt lights, ballast/transformers, electrical fans, thermostats, electric heaters, drying racks, plastic baggies, watering tanks, common garden tools and other such equipment are used in the indoor and outdoor manufacturing of marijuana. Also such drug paraphernalia as scissors, scales, packaging materials, and other such items are used in the processing of marijuana. Those items of equipment and paraphernalia are normally found within the residence, vehicles and/or curtilage of those premises associated with the growing of marijuana and are of evidentiary value."

Based on the facts recited above, a magistrate issued a search warrant for defendant's home. The warrant was executed and marijuana buds, stripped marijuana stalks, marijuana leaves, drug records and scales were found. Defendant moved to suppress those items. The trial court denied the motion.

■■ A magistrate is authorized to issue a search warrant if the supporting affidavit establishes probable cause. ORS 133.555(2); *State v. Russell,* 122 Or App 261, 265, 857 P2d 220 (1993). "Probable cause exists if the magistrate could reasonably conclude that seizable things probably will be found in the place to be searched." *State v. Apolo,* 126 Or App 652, 656, 870 P2d 243, *rev den* 319 Or 81 (1994). In making the probable cause determination in this case, the magistrate who issued the warrant was allowed to consider the affiant's representations, based on her training and experience, that people who grow marijuana are likely to have marijuana and growing paraphernalia in their homes. *State v. Evoniuk/ Niemi,* 80 Or App 405, 412-13, 722 P2d 1277 (1986). Defendant correctly posits, however, that the affiant's representations, standing alone, do not supply probable cause to search his home. He accurately asserts that there must be other facts from which the magistrate could reasonably conclude that marijuana, cultivation tools or paraphernalia used in the processing or sale of marijuana would likely be found at the residence. See *State v. Chezem,* 125 Or App 341, 350 n 3, 865 P2d 1307 (1993). The affidavit in this case is legally insufficient, defendant reasons, because it does not contain any such facts. He relies exclusively on our decision in *State v. Evans,* 119 Or App 44, 849 P2d 539 (1993).

■ In *Evans,* a search warrant was issued for the defendants' residence. The affidavit related that law enforcement

---

"* * * * *

"That I know, based upon my training and experience as a law enforcement officer, that a common practice for growing marijuana is to start the plants from either seeds or clones in an indoor location with the aid of ultraviolet light. The plants are subsequently transplanted into large pots as they grow in size. Once they have reached a size on [sic] one (1) foot to three (3) feet tall they are often transplanted to their final growing location. It is also a common practice for a marijuana grower to keep a number of growing marijuana plants at their residence."

officers had discovered two marijuana gardens on government land, that they had seen one of the defendants tending the plants at the gardens and that his address had been traced through the license plate of the truck he was driving. The affidavit also stated that the affiant, an experienced officer trained in narcotics investigation, knew from his background that people who grow and distribute marijuana commonly keep marijuana plants, paraphernalia and drug records in their homes. We held that, to support the issuance of a warrant to search a residence for evidence of a marijuana grow operation, an affidavit must demonstrate a relationship between the resident and the grow operation[3] *and*

> "*contain additional facts* to support probable cause to believe that marijuana or certain kinds of implements of cultivation or paraphernalia for processing or sale of marijuana are probably in the building to be searched." 119 Or App at 47. (Emphasis in original.)

We concluded that the affidavit did not establish probable cause to search the defendants' residence, because it

> "contained no facts about any activity at the home except for defendants' living there. *There were no facts indicating that defendants had been harvesting or transporting the plants,* or that any tools used to care for the plants were taken from the home to the site. The officer's recitations of his professional experiences provided the only link between the residence and the marijuana plants."[4] 119 Or App at 46. (Emphasis supplied.)

This case is substantially distinguishable from *Evans* with respect to the sufficiency of facts establishing probable cause that marijuana-related implements or paraphernalia were in defendant's house. Six marijuana plants were harvested from the site during the three-day period that

---

[3] Defendant does not argue that the affidavit in this case failed to establish a nexus between himself and the marijuana plants.

[4] Our determination in *Evans* that the affiant's representations did not furnish the requisite connection between the residence and the plants was based, in part, on the fact that the affiant's professional knowledge primarily concerned the usual practices of those involved in growing, *distributing and selling* marijuana, and that there "were no facts indicating that defendants were distributing and selling marijuana." 119 Or App at 47. Although the affiant in this case did refer to the customary practices of people who distribute and sell marijuana, she also related substantial information about the common endeavors of those who *grow* marijuana. There are ample facts indicating that defendant was growing marijuana.

defendant was photographed removing water from barrels close to the plants. It was reasonable to infer that those plants were harvested by the person photographed nearby, namely, defendant, and that the harvested plants were probably in defendant's possession. Moreover, the proximity of defendant's residence — only two tenths of a mile from the garden site — and the absence of any implements at the site strongly suggested that the harvested plants had probably been transported to defendant's home. These facts, combined with the affiant's knowledge that marijuana growers commonly keep marijuana and implements in their homes, were sufficient to allow the magistrate to conclude that defendant's home was a probable location to find the evidence. Accordingly, we hold that the trial court properly denied defendant's motion to suppress.

Affirmed.