***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted June 24, affirmed July 20, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY MICHAEL MOORE,
*Defendant-Appellant.*

Baker County Circuit Court
19CR83082; A174470

Matthew B. Shirtcliff, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mark Kimbrell, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants and reckless driving. He raises two related assignments of error, each of which challenges the denial of his motion to suppress evidence of testing of defendant's blood. We conclude that defendant failed to preserve his claims of error and therefore affirm.

The relevant facts are not disputed. Defendant was involved in a traffic accident in which the car that he was driving collided with a truck and rolled off the road. The truck driver told responding police that defendant had tried to pass him, did not maintain his lane, struck his truck, collided with the median, and then rolled off the road.

Oregon State Police Trooper Potter spoke with defendant, who explained that the truck driver committed "road rage," but defendant could not otherwise remember how the accident occurred. Potter could smell alcohol and observed that defendant's eyes were bloodshot and watery. Defendant was also slurring his words heavily. Officers found marijuana in the car and alcohol containers around the vehicle. Defendant admitted to drinking one hard seltzer. He consented to performing the horizontal gaze nystagmus (HGN) test and performed poorly.

Paramedics transported defendant to the hospital and Potter followed. While in the emergency room with defendant, Potter could smell alcohol on defendant's breath. Defendant again agreed to perform the HGN test and again performed poorly. Defendant declined Potter's request for a blood test. However, the hospital staff had taken his blood as part of their standard procedures and told Potter that the test had revealed that defendant's blood alcohol content (BAC) was .22 percent.

Potter then applied for a warrant to seize and search defendant's blood sample. In his affidavit in support of the warrant, Potter set forth the facts around the accident: the truck driver's statements, the results of the two HGN tests, the odor of alcohol on defendant's breath, and the results of

the hospital's blood draw. A judge authorized the search and seizure.

After defendant was charged, he filed a motion to suppress. In his motion, he argued that the trial court should suppress the results of the two HGN tests because they were unconstitutional searches. He also argued that the trial court should suppress evidence relating to the warranted seizure of his blood because it was based upon "constitutionally tainted information[,]" namely, what he perceived to be the unconstitutional HGN tests.

At the hearing on the motion to suppress, defendant prefaced his argument by noting that all of his arguments "basically relate to probable cause[.]" Defendant "clarif[ied] sort of the challenges I'm making" and argued that the HGN tests were unlawful because they were administered without proper scientific protocols and that absent the HGN test results, Potter's affidavit failed to establish probable cause. Defendant also added that the state failed to prove that he consented to the HGN tests and that Potter had failed to properly administer them.

During defendant's argument, the trial court asked whether defendant agreed that the trial court could consider the fact that the hospital staff had shared defendant's BAC with Potter. In response, defendant argued that the hospital's disclosure of defendant's blood was a "severe intrusion on privacy":

"Hanging around a hospital near a person, and while there are rules out there that I guess permit hospital personnel to basically ignore HIPAA requirements and disclose confidential medical information to law enforcement, I think the Court should consider that those rules are a severe intrusion on privacy, with, you know, the government motive there and the public safety, but they are an intrusion and, therefore, having the officer in such proximate—in such proximity to this scene of, you know, the defendant getting this medical treatment is likewise an invasion of protected privacy, and without probable cause to be there, which would have been broken a long way back, I argue that [Potter] would not have, even though he testified he would have gone to the hospital, that was for a number of reasons, including talking to the passenger, trying

to get more information, it would not have been, you know, right there with the defendant to receive that, so I don't think the State can cure it."

For its part, the state noted that it understood defendant to be challenging the lawfulness of the HGN tests and the validity of the warrant and accompanying affidavit.

The trial court denied the motion to suppress, first orally and then in a written opinion. It concluded that defendant had consented to the HGN tests and the results were reliable; thus, the HGN tests did not need to be excised from the warrant. The court also concluded that even if the results of the HGN tests were excised, the affidavit still contained probable cause to seize and then search defendant's blood. Additionally, during its oral ruling, the trial court concluded that defendant's blood test results did not have to be excised from the warrant because "it's not a taint, it's not a continued warranted search[.]"

On appeal, defendant challenges the trial court's rulings. In his first assignment of error, defendant argues that the trial court erred in "not suppressing the hospital's disclosure of defendant's blood alcohol content." In his second, he argues that that disclosure tainted the subsequent warrant. In support of those claims, defendant argues that the hospital's disclosure of the blood test results to the police violated defendant's state and federal constitutional rights against unlawful searches and seizures. More specifically, he asserts that, under ORS 676.260,[1] the hospital staff were statutorily required to disclose the blood test results to police, thereby making the hospital staff state actors. In defendant's view, the hospital staff (as state actors) violated his constitutionally protected privacy interests in the blood

---

[1] ORS 676.260(1) provides:

"A health care facility that provides medical care immediately after a motor vehicle accident to a person reasonably believed to be the operator of a motor vehicle involved in the accident shall notify any law enforcement officer who is at the health care facility and is acting in an official capacity in relation to the motor vehicle accident if the health care facility becomes aware, as a result of any blood test performed in the course of that treatment, that:

"(a) The person's blood alcohol level meets or exceeds the percent specified in ORS 813.010;"

test results by disclosing those results to police. Defendant acknowledges that, below, he never cited Article I, section 9, or the Fourth Amendment and that the argument he raises on appeal "was not his primary argument[.]" He nonetheless asserts that he preserved the argument that the disclosure was an intrusion on his privacy and, consequently, had to be suppressed.[2]

We disagree. Defendant's focus, both in his motion to suppress and at the hearing on that motion, was on the lawfulness of the HGN tests and the impact of those tests, if unlawful, on the subsequent warrant. The state understood as much and framed its arguments accordingly, as the trial court did in its rulings.

To be sure, during the hearing, the trial court asked defendant whether it could consider that the hospital had shared the information about defendant's BAC and defendant responded that it was a "severe intrusion" on his privacy. But as the quote above demonstrates, defendant did not expand on that argument, nor did he ground it in any kind of legal principle. Instead, he continued to focus on his main contention—that the HGN tests were unlawful— and argued that that illegality caused Potter to stay with defendant at the hospital, resulting in an additional invasion of privacy because Potter was "right there with the defendant to receive" the results of the hospital's blood test. He did not argue, as he now does on appeal, that a particular statute required the hospital to share the blood test results with police or that the statute made the hospital staff state actors for purposes of Article I, section 9, the Fourth Amendment, or both. Because defendant failed to present his relatively novel constitutional argument below, we cannot conclude that the purposes of preservation—including ensuring that the trial court and the opposing party had an opportunity to address the issues raised—have been

---

[2] In support of his argument that he preserved his claim of error, defendant points out that he relied on *State v. Binner*, 128 Or App 639, 877 P2d 642, *rev den*, 320 Or 325 (1994), in his motion to suppress. Yet defendant relied on *Binner* for the argument that when evidence in a search warrant affidavit is derived from an unconstitutional search or seizure, that evidence should be excised from the affidavit. As defendant framed it, it was the HGN test results—not the hospital's blood draw—that should have been excised.

served.[3] *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (the purpose of preservation is to give the trial court a "chance to consider and rule on" the argument now being made, perhaps avoiding the need for an appeal altogether); *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (preservation "ensures fairness to opposing parties").

Moreover, because defendant has not asked us to review his assignments as plain error, we decline to do so. *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so," as "it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error." (citations and internal quotation marks omitted)).

Affirmed.

---

[3] We do not read the trial court's comment in its oral ruling—that the hospital's sharing of the blood results with Potter did not have to be excised from the warrant because "it's not a taint, it's not a continued warranted search"—as a reflection of the trial court having been apprised of the argument that defendant now makes on appeal.