Argued and submitted January 20, the decision of the Court of Appeals reversed and judgment of the trial court affirmed December 20, 1988

STATE OF OREGON,
*Petitioner on Review,*

*v.*

WILLIAM ROBERT ANDREASON,
*Respondent on Review.*

(TC 85-2121, CA A39306 (Control))

STATE OF OREGON,
*Petitioner on Review,*

*v.*

PATRICIA ANN COOKE,
*Respondent on Review.*

(85-2122; CA A39307; SC S34636)
(Cases Consolidated)

766 P2d 1024

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause and filed the petition on behalf of the petitioner on review. With him on the petition were Dave

Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause on behalf of the respondents on review.

GILLETTE, J.

### GILLETTE, J.

The issue in this criminal case is whether the search and seizure provision in the Oregon Constitution protects land outside the "curtilage" of a residence.[1] The Court of Appeals concluded that it does, and reversed the defendants' convictions for the manufacture and possession of controlled substances. *State v. Andreason/Cooke,* 87 Or App 724, 743 P2d 781 (1987). We agree with the Court of Appeals as to the scope of Article I, section 9, of the Oregon Constitution, but reverse that court's application of the law to the facts.

### FACTS

We take our statement of facts from the trial court's findings of fact, together with the facts on which the parties agree. Coos County Deputy Sheriff Pat Downing was contacted by Elmer Strader, a private citizen. Strader said he had been hunting in the Dement Creek area when he wandered into a marijuana patch. He did not know whose land he was on, but believed that most of the land in that area was owned by Georgia Pacific and the Bureau of Land Management. Strader accompanied Deputy Downing to the area, but they were unable to locate the marijuana.

The next morning, Deputies Thaxton and Dinsmore, accompanied by Strader, returned to the area with permission from Georgia-Pacific to search its property. Initially, the officers followed a barbed wire fence, posted with "No Trespassing" signs, that marked the property line between Georgia-Pacific land and defendants' land. The fence ended at a creek bed. The property beyond was unmarked, unfenced and covered with dense brush. The boundary between Georgia-Pacific's land and defendants' land was marked by at least one survey marker. Andreason testified that the property line was marked by posts driven into the ground every 1/16 of a mile and by ribbons.

The officers found the marijuana patch past the fence

---

[1] Or Const Art I, § 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

line, on land belonging to defendants. A well-defined trail led from the patch to defendants' residence which, according to the affidavit, was approximately 75 feet from the marijuana patch.[2] The officers then called Sergeant Dalton, who came to the area. The officers arrested Andreason and "secured" the area while Dalton obtained a search warrant. A subsequent search pursuant to the warrant revealed marijuana and other incriminating evidence, including evidence implicating Andreason's co-defendant, Cooke.

Andreason and Cooke filed a motion to suppress all evidence obtained as a result of the officers' entry onto defendants' property. The trial court denied the motion, stating:

"* * * I don't see any reasonable expectation of privacy up in that area. Clearly, the officer honored the fence line. There wasn't any indication at all that they crossed over that fence. As a matter of fact, they went way to the north of it before they started turning to the west and actually searched up in the eastern part, up above on what has been determined, I think, on the evidence to be Georgia-Pacific property. And in looking at the photographs, at least, the photograph of the area up in the vicinity of "F" that's really brushy stuff up in there, and I don't see how anybody can identify anything up in that area. And I think the officers' conduct up there was reasonable, and there was no reasonable expectation of privacy where those marijuana gardens were found. And, therefore, I will deny the Motion to Suppress, and in all respects."

The Court of Appeals, in a per curiam opinion, reversed the convictions, relying on its decision in *State v. Dixson/Digby*, 87 Or App 1, 740 P2d 1224 (1987). *State v. Andreason/Cooke, supra*, 87 Or App at 724. We allowed review in *Dixson/Digby* and this case in order to address the important constitutional question involved.

In *State v. Dixson/Digby*, 307 Or 195, 766 P2d 1015 (1988), this court ruled that the protections of Article I, section 9, of the Oregon Constitution extend to property like that involved in this case. Our remaining task is to determine whether the officer's actions in this case violated Article I, section 9.

---

[2] There is conflicting evidence on the distance from the marijuana patch to the residence; Deputy Thaxton testified that they were 100 to 150 yards apart, and Sergeant Dalton testified that they were 50 to 75 yards apart.

We conclude that they did not. The land on which the marijuana was discovered was unfenced. The trial court found that the officers did not cross any fences and that, because the area was so "brushy," it was difficult to identify the property boundary. Although defendant Andreason testified that his property line was marked by posts and ribbons, nothing about those markers — assuming, as is not entirely clear, that the trial judge believed Andreason's story in this regard — manifests an intent by the owner to exclude others. The warrantless entry onto the property did not violate Article I, section 9, of the Oregon Constitution. The Court of Appeals erred in concluding otherwise.

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.