Argued and submitted August 23, reversed and remanded October 25, 1989

### STATE OF OREGON,
*Appellant,*

*v.*

### JOHN WALCH,
*Respondent.*

(L87-254CR, L87-255CR; CA A48054)

781 P2d 406

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Enver Bozgoz, Klamath Falls, argued the cause and filed the brief for respondent.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

.

**RIGGS, J.**

Defendant was indicted for the manufacture of a controlled substance. ORS 475.992. The state appeals a pretrial order granting his motion to suppress. We reverse.

The trial court made findings, which are not only supported by evidence in the record but are very helpful on review. Three hunters discovered a marijuana growing operation. They contacted Trooper Moore of the Oregon State Police, who believed, from the description that they provided, that the site was United States Forest Service property. Led by one of the hunters, several law enforcement officers returned to the area, travelling up an unpaved Forest Service road past the "Gladden"[1] residence and property. There were a number of "NO HUNTING/TRESPASSING" signs posted on the trees and the fence in front of the Gladden property. Approximately one and one-half miles past the residence, the officers parked on Forest Service property and walked into the woods, wandering through brushy, hilly terrain. They found the remains of a dilapidated, partially down fence, located on Forest Service property. Eventually, they arrived at the marijuana patch, which was located on the Gladden property. There were no "No Trespassing" or "No Hunting" signs. The residence, one-fourth mile away, was not visible from the site. Because the property line between Forest Service property and the Gladden property was not marked, the officers were not sure whether they had entered private property. Some officers went to obtain a search warrant, leaving Officer Moore at the site. Defendant, then living at the Gladden residence, appeared at the site and was arrested in an armed confrontation. After returning with a warrant, the officers searched the residence and surrounding property.

Defendant filed a motion to suppress all evidence of marijuana cultivation and all evidence linking him to the growing operation, contending that the warrantless entry of the property violated Article I, section 9, of the Oregon Constitution. The trial court granted the motion, concluding that our opinion in *State v. Dixson/Digby,* 87 Or App 1, 740 P2d 1224 (1987), *rev'd* 307 Or 195, 766 P2d 1015 (1988), compelled

---

[1] The name of the property owner is spelled "Gladden" in the transcript and in the state's brief. The trial court's order and defendant's brief spell it "Gladin."

such a result, because the officers had entered the property without permission. Subsequent to the trial court's ruling, the Supreme Court reversed our decision and articulated a test to determine when the protections of Article I, section 9, apply to open land.[2] The test requires that a person manifest an intent to exclude the public by erecting barriers to entry or by posting signs in order to preserve a constitutionally protected privacy interest.

Defendant failed to meet the test. His land was unbounded; the only fence that the officers encountered was unmaintained, partially down and on Forest Service land. Although there were "No Trespassing" and "No Hunting" signs in front of the Gladden property along the access road, there were no signs, boundary markers or fences around the remaining perimeters. Nothing alerted the officers that they had crossed onto private property when they found the marijuana patch. Defendant did not manifest the requisite intent to exclude the public, and the trial court erred in suppressing the evidence.

Reversed and remanded.

---

[2] In *Dixson/Digby,* the Supreme Court stated:

"A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs. This rule will not unduly hamper law enforcement officers in their attempts to curtail the manufacture of and trafficking in illegal drugs, because it does not require investigating officers to draw any deduction other than that required of the general public: if land is *fenced, posted or otherwise closed off,* one does not enter it without permission or in the officer's situation, permission or a warrant." 307 Or at 212. (Emphasis supplied.)