Argued and submitted August 5, reversed and remanded October 26, petition for review denied December 20, 1994 (320 Or 492)

## STATE OF OREGON,
*Appellant,*

*v.*

## JERRY RONALD POPPE,
*Respondent.*

(93-211-C2; CA A80782)

883 P2d 905

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Carl Caplan argued the cause and filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant was indicted for unlawful manufacture, possession and delivery of a controlled substance and first degree theft of electrical power. ORS 475.992(1); ORS 475.992(4); ORS 475.992; ORS 164.055. The state appeals from a pretrial order that suppressed evidence seized from defendant's property pursuant to a search warrant. We reverse and remand.

The central issue in this case is whether the facts in the affidavit supporting the search warrant were sufficient to allow the magistrate to conclude that there was probable cause to believe that evidence of a marijuana grow operation would be found on defendant's property. The affidavit detailed the affiant's extensive training and expertise in narcotics investigation and set forth the following facts: During the third week of August, 1991, the affiant, Detective Skinner, and Detective Patton were investigating a report of an outdoor marijuana grow operation in the mountains. A property owner had reported finding a marijuana "garden" on her property and had given the officers a map and directions to the property. After locating the garden, the officers followed a trail from the garden to an unoccupied travel trailer. The officers believed that the owner of the property on which the trailer was located was responsible for the marijuana garden. Attempting to return to the main road, the officers followed an old logging road.

As the officers reached the top of a hill, they saw a large metal building. Skinner and Patton could hear a radio inside the building playing loudly, and they wanted to question the occupant about his or her knowledge of who owned the adjoining property. The officers approached the building. One hundred feet from the building, the officers encountered a single strand of barbed wire lying on the ground. There were no signs indicating "No Trespassing." As Skinner approached the front door of the metal building, he noticed a house nearby. The officers walked up to the front door of the metal building. Skinner knocked on the door and announced his presence, but no one answered. The officers looked in the window next to the door and saw an activated fluorescent light in what appeared to be a wood shop. The officers could hear a humming noise coming from the building. Skinner

stated that, in his experience, lights used in indoor marijuana "grows" are powered by ballasts.[1] Skinner also stated that he had heard the same humming noise on at least 30 prior occasions, and that in each instance, the noise had been generated by ballasts in active marijuana grows.

While looking in the window next to the door, Skinner saw a door to a separate room that was built inside the main shop. The room occupied two-thirds of the building. The officers saw black paper covering the walls and a dead bolt lock above the door knob to the interior room. The door to the interior room was not a typical interior door, but "a heavy exterior door." Skinner also observed two turbine vents on top of the building. Skinner stated that lights and ballasts used in an indoor marijuana grow operation generate substantial amounts of heat and moisture, which must be removed from the room. This is commonly accomplished through the use of turbine vents. Skinner related that, in his experience, he had never seen an indoor marijuana grow that did not have a vent to exhaust the excess heat.

Still trying to contact the owner, the officers approached the nearby house, but it was vacant. After leaving the property by the route they had come in, Skinner drove to the driveway leading to the shop building and determined the address to be 8055 East Antelope Road. At that time, Skinner noticed a "No Trespassing" sign hanging from a cable strung across the front driveway. Later, Skinner determined through police files that the land was owned by defendant.

Another police officer related to Skinner that two years earlier, on June 22, 1990, an anonymous female informant had reported that defendant was growing marijuana at a location on East Antelope Road. The informant had further

---

[1] The only disputed fact arises from Skinner's statement in the affidavit that both officers "realized that this 'humming' noise was a 'ballast' for grow lights." Below, defendant made a motion to controvert that statement. A defense witness, an architect, testified that in his opinion, a person listening to the hum could not tell what equipment the ballast was powering. On cross-examination, he admitted he had no training as a police officer, nor any experience with large-scale marijuana grows. He admitted that he did not know what sound would be made by the ballasts in defendant's building. Skinner again testified, reaffirming that what he heard "was a ballast light for a marijuana grow." He testified that he had heard other ballasts in metal buildings and that he could tell the difference between the sound made by those ballasts and the sound made by ballasts used to power grow lights. The circuit court did not rule on the motion to controvert.

related that a third party, Ida Beveridge, was obtaining marijuana from defendant and selling it. Another detective informed Skinner that, in June, 1992, Beveridge had approached an off-duty police officer and offered to sell him a "dime bag" of marijuana.

Skinner subsequently subpoenaed the electric power records for 8055 East Antelope Road. Those records showed that the average power consumption over a period of 13 months was $22.00 per month. Skinner observed the metal building on nine occasions between August, 1991, and January, 1993.[2] On every occasion, the shop light was on and the radio was playing. There was an outside security light that came on at night. Based on his training and experience, Skinner estimated that the lights and the radio, if used 24 hours a day, should consume only $8.62 worth of electricity per 30-day period. Skinner estimated that a ballast and grow light, when operated 12 hours per day, would consume $15.94 worth of electricity per month and account for the higher bills.[3]

Skinner examined 13 similar shop buildings on properties adjoining defendant's property, and defendant's shop was the only one equipped with turbine vents. Skinner explained that the use of ballasts and grow lights creates heat that must be removed from the marijuana grow. He stated that the exit of hot air from the vent causes the blades of the vent to move in a clockwise direction. On several occasions when watching defendant's property, Skinner observed the turbine vent above the inner room moving in a clockwise direction when the turbine vent above the wood shop was not

---

[2] Having observed the "No Trespassing" sign after leaving defendant's property, Skinner never again entered defendant's property. He made all of his observations from the neighboring property or the public road. Five trips to observe the building took place within the two weeks immediately preceding the issuance of the search warrant.

[3] Electric bills averaging $22.00 per month are not extraordinarily high. However, they were higher than could be readily explained by the implements Skinner observed in use. Furthermore, Skinner explained in his affidavit that where "low power records were. noted, and a search warrant was served, I learned that the increase in consumption [caused by the grow lights] was handled by a generator or by stealing electricity." Although not relevant to our determination of the sufficiency of the affidavit to support the warrant, we note that when the warrant was served in this case, Skinner discovered that defendant had patched directly into a power line and was stealing electricity.

moving. There was no wind on any of those occasions. When Skinner observed the building on January 8, 1993, it had been snowing for 12 hours. Snow had accumulated on the roof and the vent above the wood shop. However, no snow had built up on or around the vent above the inner room. Skinner believed that the snow was being melted by the heat released from the vent above the room where he suspected defendant was growing marijuana.

On January 11, 1993, Skinner noticed a large dog guarding the property. Skinner related that in his experience, it was common to post "No Trespassing" signs and use guard dogs to discourage people from approaching the property and discovering the growing marijuana. During the night of January 13, 1993, when Skinner was watching the property, he observed a man enter the shop building. As the man opened the interior door, Skinner saw a bright pink-tinted light coming from the inner room. Two minutes later, when the man came out, Skinner again saw the pink light. Skinner stated that based upon his training and experience, he knew the bright, tinted light was a grow light.

Based on those facts, a magistrate issued a search warrant for the shop building and the residence.[4] Upon executing the warrant, officers seized more than 100 marijuana plants, more than 28 baggies full of marijuana, baggies containing marijuana seeds, potting soil, grow lights, ballasts, fans, two sets of scales, paperwork and other implements related to the growing and processing of marijuana.

After being indicted, defendant moved to suppress the evidence seized from his property. He argued that the statement by the unnamed informant regarding Beveridge's receipt of marijuana from defendant should be excised from the affidavit, because the affidavit failed to establish the informant's reliability, veracity or basis of knowledge. Defendant also argued that the officers were trespassing on his property when they discovered the building and that their observations should be excised from the affidavit. Defendant moved to controvert Skinner's statement that he knew the humming noise had come from ballasts used for grow lights.

---

[4] From the record, it appears no evidence was seized from the residence and defendant makes no argument with respect to that search.

20

Defendant contended that the remaining allegations in the affidavit did not give rise to probable cause. The circuit court concluded that the officers had not trespassed, but that the affidavit failed to establish probable cause. The court granted defendant's motion to suppress and the state appeals.

A magistrate is authorized to issue a search warrant if the supporting affidavit establishes probable cause. ORS 133.555(2); *State v. Russell*, 122 Or App 261, 265, 857 P2d 220 (1993). An affidavit is sufficient to support a search warrant if the magistrate could reasonably conclude that the facts recited in the affidavit are true and that the items to be seized will probably be found in the location to be searched. *State v. Villigran*, 294 Or 404, 408, 657 P2d 1223 (1983); *State v. Chezem*, 125 Or App 341, 345, 865 P2d 1307 (1993). We review to determine whether the information in the affidavit was sufficient to allow a neutral and detached magistrate to conclude that there was probable cause to believe defendant was growing marijuana in his shop building. *State v. Binner*, 128 Or App 639, 645, 877 P2d 642 (1994). This court "ought not adopt a negative approach toward warrant applications, but should review them in a common sense nontechnical manner." *State v. Young*, 108 Or App 196, 200, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992); *State v. Mellinger*, 52 Or App 21, 627 P2d 897 (1981). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Tacker*, 241 Or 597, 407 P2d 851 (1965).

We will first address whether the informant's tip must be excised from the affidavit. As defendant asserts, and the state concedes, the affidavit establishes neither the basis of knowledge nor the veracity or reliability of the unnamed informant. Consequently, the statement must be disregarded. *State v. Russell, supra*, 122 Or App at 266.[5] Excising

---

[5] In a case cited by the state, *State v. Christen/Hankins*, 79 Or App 774, 720 P2d 1303 (1986), this court stated that "information obtained by a police investigation which corroborates an informant's tip may be considered along with the tip to establish probable cause, even if the affidavit does not affirmatively set forth the

the statement of the unnamed informant, that Beveridge obtained marijuana from defendant, renders meaningless the information that Beveridge tried to sell a bag of marijuana to an off-duty police officer. Accordingly, both statements must be disregarded when considering whether the affidavit was sufficient to establish probable cause. *State v. Binner, supra*, 128 Or App at 646.

Defendant argues that he successfully controverted, and that we therefore should also disregard, Skinner's statement that he "realized that this 'humming' noise was a 'ballast' for grow lights." However, defendant did not attempt to controvert Skinner's assertions that:

1) he heard a humming noise coming from defendant's shop building, and

2) he had heard the same humming noise on 30 prior occassions, all of which involved ballasts used for grow lights in indoor marijuana grows.

Those assertions sufficiently conveyed the information that Skinner believed the noise to be coming from a ballast for grow lights. Deleting the one statement that defendant disputes does nothing to weaken the sufficiency of the affidavit.

 Next, we address defendant's argument that the officers' act of looking into the shop window constituted a trespass. To answer this question, we must first determine whether the officers were lawfully on defendant's property. Defendant does not dispute the fact that Skinner and Patton were attempting to contact and question the owner of the building about the ownership of adjoining property. Both properties were located in a rural area. Skinner stated in the affidavit that the land was heavily wooded and contained parcels owned by the Bureau of Land Management, the "Timber Company" and private individuals. There were "few signs, boundary lines, fences or roads to determine who

---

basis of the informant's knowledge." 79 Or App at 782. That language has been disapproved by our subsequent holdings. *See State v. Cotter/Ray*, 125 Or App 210, 864 P2d 875 (1993) ("If the affidavit provides no facts for evaluating the basis of the informant's knowledge, then the informant's statements must be stricken from the affidavit."); *State v. Young, supra*, 108 Or App at 201 ("The basis of knowledge component serves to give the issuing magistrate a basis for determining the weight to give the information supplied by the informant."); *State v. McBride*, 96 Or App 268, 276, 773 P2d 379, *rev den* 308 Or 184 (1989) (where the affidavit does not establish a basis of knowledge, the tip must be disregarded).

owns the property." In such an area, where it is "difficult to tell where one piece of property ends and another begins," a person who wishes to maintain a protected privacy interest must take steps, such as erecting a fence or posting signs, to exclude intruders. *State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988). Posting a "No Trespassing" sign facing the road in front of property is insufficient to exclude the public or police from entering where no signs, barriers, or fences indicate the property boundaries. *State v. Gabbard*, 129 Or App 122, 128, 877 P2d 1217 (1994) (where an officer does not see a "No Trespassing" sign while making no deliberate effort to avoid seeing it, the sign does not adequately manifest defendant's intent to exclude visitors); *State v. Walch*, 99 Or App 180, 183, 781 P2d 406 (1989). A single strand of barbed wire lying on the ground is not sufficient to show an intent to exclude the public or the police. *See State v. Walch, supra*, 99 Or App at 182; *State v. Andreason/Cooke*, 307 Or 190, 766 P2d 1024 (1988). Even if the officers had seen the sign, they could have reasonably concluded that the sign was "intended only to exclude those who might put the property to their own uses, but that it did not apply to visitors who desired to contact the residents." *State v. Gabbard, supra*, 129 Or App at 128. We hold that the officers' presence on defendant's property was lawful. The circuit court did not err when it concluded that the officers' entry onto defendant's property was not a trespass.

We turn to the question of whether looking in the window of the shop constituted a trespass. The officers were lawfully at the front door and the window was next to the door. "When the conduct of the officer in gaining access to the vantage point is itself unobjectionable, privacy interests are not threatened by allowing the officer so positioned to use his naked eye to look into * * * an uncovered window." 1 LaFave, *Search and Seizure* 408, § 2.3(e) (2d ed 1987). Where an officer has a legitimate reason for being present on the property, observations made through an uncovered window may form a lawful basis for the issuance of a search warrant. *State v. Illingworth*, 60 Or App 150, 652 P2d 834 (1982), *rev den* 294 Or 569 (1983); *State v. Mack*, 21 Or App 522, 532, 535 P2d 766, *rev den* (1975). Because the front door was a lawful vantage point from which to look into the window, doing so was not a trespass.

Finally, we address the question of whether, without the excised material relating to the anonymous tip, the affidavit established probable cause to believe marijuana was being grown on defendant's property. The affidavit establishes the following facts:

(1) Defendant's shop contained a large inner room;

(2) The door to the inner room was a heavy exterior door rather than a typical interior door;

(3) The door to the inner room was equipped with a dead bolt lock;

(4) The outer walls of the inner room were covered with black paper;

(5) The officers heard a humming noise that sounded the same as noise they had previously heard on occasions where ballasts for grow lights were in use;

(6) The shop was equipped with two turbine vents, while none of 13 similar shops located nearby were so equipped;

(7) The turbine vent above the inner room was spinning and releasing heat, while the vent above the wood shop was not;

(8) The officers saw a bright pink-tinted light consistent with the appearance of a grow light coming from the inner room;

(9) Defendant had a "No Trespassing" sign and a barking dog on his property;

(10) The power bills for defendant's shop indicated a higher power consumption than could be accounted for by the implements the officers saw in use.

Those facts were sufficient to support the officer's conclusion that defendant was growing something in his shop building. The final question is whether the magistrate could infer that that "something" was marijuana.

■ ■ The sufficiency of the allegations in the affidavit depends not only on the facts asserted, but also on "inferences which reasonably arise from the facts stated in the affidavit." *State v. Ingram*, 251 Or 324, 326, 445 P2d 503 (1968); *State v. Futch*, 123 Or App 176, 178, 860 P2d 264 (1993), *rev allowed* 319 Or 406 (1994). In making those inferences, the magistrate may consider the affiant's training and expertise. *State v. Prince*, 93 Or App 106, 113, 760 P2d

1356 (1988). When an officer's expertise is considered in conjunction with observed facts in the affidavit, circumstances that "might appear innocent to a lay person may be incriminating when viewed by a trained and experienced police officer." 93 Or App at 113. Below, defendant suggested the possibility that he could be growing tomatoes in his shop building. However, Skinner testified that it would be prohibitively expensive to grow tomatoes under grow lights. In his 19 years of experience as an officer, he had never discovered an indoor vegetable grow operation, only marijuana grow operations. Further, it would seem unnecessary to protect tomatoes with a heavy door, a dead bolt lock and a guard dog. The inference that defendant was growing marijuana reasonably arises from the facts in the affidavit. We hold that the affidavit established probable cause to search defendant's property. Accordingly, the circuit court erred by suppressing the evidence.

Reversed and remanded.