Argued and submitted October 16, 1991, convictions affirmed; conditions of probation vacated in part; remanded for resentencing June 3, reconsideration denied September 2, petition for review denied October 27, 1992 (314 Or 574)

STATE OF OREGON,
*Respondent,*

*v.*

DAVID ROBERT HITESMAN,
*Appellant.*

(CR89232; CA A66746 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

DAVID ALLEN PAGE,
*Appellant.*

(CR89231; CA A66778)
(Cases Consolidated)

833 P2d 306

Andrew Willis Carter, The Dalles, argued the cause for appellants. On the brief was Paul G. Crowley, Hood River.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and De Muniz, Judges.

DEITS, J.

**DEITS, J.**

In this consolidated appeal, defendants seek reversal of their convictions for manufacture of a controlled substance. ORS 475.992. They assign error to the trial court's denial of their motions to suppress and to controvert. They also argue that some of the conditions of probation imposed by the trial court are invalid. We affirm the convictions, but vacate the conditions of probation.

In June, 1989, the Wasco County Sheriff's office received an anonymous letter saying that defendant Page was growing marijuana on his property, a 40-acre parcel located in rural Wasco County. On June 15, Deputy McCormick and Detective Lennox, dressed in civilian clothes, went to the Page residence, which is located in the northwest corner of the property off Winslow Road. Lennox went to the door of the house and spoke with a person who answered the door and identified himself as "Page."[1] Lennox asked for the address of a person who lived in the area. McCormick saw gardening tools on the property. That information was included in the affidavit supporting the issuance of the search warrant.

On June 19, McCormick returned to the property with two Oregon State Police officers. They turned off Winslow Road onto a dirt road located on property owned by Hansen that is adjacent to Page's property. There were two "No Trespassing" signs posted on the dirt road near the Winslow Road junction. Both signs were faded, and one was not very legible. None of the officers saw the signs. They parked their car on the dirt road and walked across Hansen's property and onto the unfenced southern half of the Page property. The officers came to a fence on the Page property that divided the north and south halves. One of the state police officers climbed over the fence. Nothing relating to a marijuana operation was seen by the officers at that time. They returned the next day and parked in the same place. This time they walked east across Hansen's property. They came to a fence that separated Hansen's and defendant Page's property. They did not cross the fence but, from their vantage point on Hansen's property, they saw marijuana plants growing on the Page property. That information was

---

[1] The person was later determined to be Hitesman.

also included in the affidavit supporting the search warrant. Defendants were arrested after police searched the Page property pursuant to the warrant on June 21.

■   Defendants argue that the trial court erred in denying their motion to suppress the evidence obtained in the search because

"the officers' observations which formed the basis for the issuance of the search warrant were the direct result of 'freewheeling official misconduct' by the police in that their observations were the direct result of repeated unlawful activity."

If any of the information included in the affidavit supporting the search warrant was unlawfully obtained in violation of defendants' rights under Article I, section 9, of the Oregon Constitution, it must be excluded from consideration in deciding whether the warrant was properly issued. *State v. Donahue*, 93 Or App 341, 345, 762 P2d 1022 (1988), *rev den* 307 Or 303 (1989). Defendants characterize all of the police entries on the Hansen and Page properties as trespasses.

■   Defendants argue that the first illegality occurred when McCormick and Lennox went to the front door of the Page residence. They assert:

"The June 15, 1989, entrance onto the Page property was purely a pretext: in plain English, the officers lied about the reason they were there and they intentionally misled the occupant of the property about who they were."

However, by definition, an undercover officer performs under pretext in an attempt to observe what a uniformed officer could not. Such activities, in themselves, are not unlawful. As the Supreme Court held in *State v. Campbell*, 306 Or 157, 167, 759 P2d 1040 (1988), "if an undercover police officer is invited into a home and observes illegal conduct, the officer has not committed a search." Moreover, we have held that approaching a person's front door and knocking is not a trespass, unless the resident has evidenced a desire to exclude casual visitors. *State v. Ohling*, 70 Or App 249, 253, 688 P2d 1384, *rev den* 298 Or 334 (1984); *see, e.g., State v. Carter/Burton*, 54 Or App 852, 636 P2d 460 (1981). In this case, there were no physical barriers to or signs on the Page driveway or on the house to evidence an intent to exclude visitors.

Defendants rely on *State v. Donahue, supra*, in which we held that a police officer acted unlawfully when he accompanied a meter reader onto the defendant's property. We reasoned that the officer was trespassing, because the implied permission to enter the property extended to the meter reader did not also extend to the police or to the general public. However, we distinguished situations where the police simply approach the front door of a residence, given that there is a generally implied consent for the general public to approach residences, unless circumstances indicate that the consent has been withdrawn. We conclude that in this case, unlike in *Donahue*, the officers did not act beyond the implied scope of consent in approaching the Page property. The officers' conduct on June 15 was not unlawful.

■ Defendants next argue that, on June 19 and 20, the police obtained information "from an unlawful vantage point," because they trespassed on the Hansen property twice and the Page property once. Defendants contend that the intrusions were unlawful and were, therefore, a violation of their privacy rights protected by Article I, section 9. If information is collected from an unlawful vantage point, it may not be used to support the issuance of a search warrant. *See State v. Breshears/Oliver*, 98 Or App 105, 112, 779 P2d 158 (1989). We conclude, however, that the information was not obtained from a vantage point that was unlawful as to defendants.

■ In *State v. Dixson/Digby*, 307 Or 195, 766 P2d 1015 (1988), the Supreme Court concluded that an entry onto a person's unbounded and unimproved land does not necessarily violate privacy interests under Article I, section 9. In order to preserve a privacy interest, the owner or resident must demonstrate an intent to exclude others.

"An individual's privacy interest in land he or she has left unimproved and unbounded is not sufficient to trigger the protections of Article I, section 9. Thus, it is not sufficient that the property in question is privately owned, or that it is shielded from view by vegetation or topographical barriers, because those features do not necessarily indicate the owner's intention that the property be kept private. A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs. * * * [I]f land is fenced,

posted or otherwise closed off, one does not enter it without permission or, in the officers' situation, permission or a warrant." 307 Or at 211.

In *Dixson/Digby*, the Supreme Court held that a cable blocking the entrance to a road and the posting of "No Hunting" signs did not provide the police with an objectively reasonable basis to believe that their presence on the property for other purposes was forbidden. 307 Or at 212. In this case, the Hansen property and the southern half of the Page property were not fenced. Although there were two "No Trespassing" signs on the Hansen property, the trial court found that both signs were old, faded and difficult to see, and one of the signs was not very legible. The owner of the property testified that, when she went back to visit the property, she also could not see the signs. The trial court also found that the officers did not see the signs until after the warrant was executed.

We conclude that the two signs on the Hansen property did not give the police objectively reasonable notice that their entry onto the land was unlawful. *See State v. Walch*, 99 Or App 180, 781 P2d 406 (1989). There was no Article I, section 9, violation when the police entered the Hansen property on June 19 and 20,[2] or when the police crossed from the Hansen property onto the Page property on June 19. There was no fence separating Page's property from Hansen's and no other evidence of Page's intent to exclude others from crossing the property.[3] Given that the police entries that defendants complain of were not unlawful, their privacy rights under Article I, section 9, were not violated, and the motion to suppress was properly denied.

■ In their second assignment of error, defendants argue that the trial court erred in denying their motion to controvert. In a motion to controvert, a defendant has the

---

[2] In view of our disposition of this assignment of error, it is unnecessary to decide whether defendants' rights under Article I, section 9, could be violated by an unlawful entry onto another person's property. *See State v. Tanner*, 304 Or 312, 745 P2d 757 (1987).

[3] We note that the police may have acted unlawfully when they crossed the fence separating the two halves of the Page property on June 19. However, that entry did not directly or indirectly produce any information that was used in the affidavit supporting the issuance of the warrant.

burden to prove by a preponderance of the evidence that the information presented in support of the issuance of a search warrant before the issuing authority "was not offered in good faith, was not accurate and was not truthful." ORS 133.703. Defendants contend that the information was not presented in good faith and was inaccurate, because many of the activities of the police on June 15 and June 19 that did not result in the discovery of any evidence were not included in the affidavit.

The trial court found that the affiant, McCormick, "neither intentionally nor recklessly omitted that of which he was reasonably unaware." It also found that any unlawful activity by the police was completed before and was unrelated to the information in the affidavit. *See* n 3, *supra*. As we said in *State v. Carter/Grant*, 101 Or App 281, 285, 790 P2d 1152, *rev allowed* 310 Or 281 (1990), "[w]hen factual questions arise on a motion to controvert, we are bound by the trial court's findings of fact, if there is evidence to support them." We conclude that the record supports the trial court's findings and that defendants did not meet their burden of disproving the "good faith, accuracy and truthfulness" of McCormick. The motion to controvert was properly denied.

■ Finally, defendants argue that the trial court imposed three invalid conditions of probation. The disputed conditions are that the defendants (1) "not reside on rural property," (2) "not reside on property with any outbuilding measuring more than 10 ft. by 10 ft." and (3) "not possess any paraphernalia capable of being used for growing marijuana, except common garden tools." A court may impose special conditions of probation "for the protection of the public or reformation of the offender, or both." ORS 137.540(2). Defendants contend that the challenged provisions are too broad to fulfill the objectives of ORS 137.540. They argue that the court's objective of preventing them from engaging in marijuana growing operations is fulfilled by other conditions of probation such as substance abuse treatment, blood and urine testing and reasonable searches. We agree.

When conditions of probation, although effective, go beyond the measures necessary to fulfill the purposes of probation, they are impermissible. *State v. Martin*, 282 Or 583, 580 P2d 536 (1978). In *State v. Jacobs*, 71 Or App 560,

692 P2d 1387 (1984), we held that a defendant with a history of criminal misbehavior could not be ordered, as a condition of probation, not to reside in the city where he committed his offenses. In *State v. Ferre*, 84 Or App 459, 734 P2d 888 (1987), we held invalid a condition of probation requiring that the defendant get court permission to enter Coos County, after he was convicted of committing a crime in North Bend. In both cases, we concluded that the restrictions placed on the defendants were unnecessarily broad and therefore invalid.

In this case, we also conclude that the contested restrictions are overly broad. Preventing defendants from living in a rural area and having certain sized buildings on their property will not prevent them from engaging in marijuana growing operations, and all three conditions impose severe limitations on defendants' ability to engage in many lawful activities. We conclude that the contested restrictions are invalid.

Convictions affirmed; conditions of probation 8, 9 and 10 vacated; remanded for resentencing.