Argued and submitted January 29, affirmed July 15, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## TAD KLINE,
*Appellant.*

### (95-555-CR; CA A95942)

963 P2d 697

Diane L. Alessi, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Tammy A. Hawkins, Certified Law Student.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, C. J., *vice* Rossman, S. J.

## DE MUNIZ, P. J.

Defendant was convicted of criminal mistreatment in the first degree, ORS 163.205, and sentenced under the sentencing guidelines to 36 months' probation. Defendant violated his probation. He appeals from a condition imposed at the revocation hearing that he was to complete drug counseling and anger management treatment before fathering any children. We affirm.

The material facts are not disputed. Defendant and his wife, Krista, had a son. When the child was in the couple's supervision, defendant broke the child's arm and inflicted numerous bruises on him. In 1990, the couple's parental rights were terminated. In March 1994, defendant and Krista had a second child, a daughter. Defendant was physically and emotionally abusive to both his wife and this child. Defendant abused methamphetamine and, when high, he was angry and hostile. When his daughter would cry, defendant would hold her close to his face while screaming obscenities at her. Defendant would also leave the baby in her crib for an entire day while preventing his wife from checking on her. Krista also reported seeing defendant throwing the baby into her crib.

When the baby was two-and-a-half months old, Krista came home from work and found the child's eyes bloodshot and her head tender and sore. Defendant denied harming the baby. In February 1995, both Krista and her parents noted bruises on the baby's chest and back, and defendant told Krista that "if anyone called the Children's Services Division, he would kill someone."

On February 4, 1995, the baby woke up crying, and defendant went to her. A few minutes later, the baby began to scream uncontrollably. Defendant brought the baby out to Krista, and she noticed that the baby was holding her leg up and would not put any weight on it. Defendant explained that the baby's leg had become twisted in the slats of the crib. He refused to allow Krista to take the baby to a doctor because "he didn't want to go through what he went through in Portland" with their son. After waiting three days, defendant allowed Krista to take the baby to a doctor, but only if

she told the doctor that she was the one who took the baby out of the crib. The doctor ordered x-rays of the injured leg, which revealed a spiral fracture.

After obtaining treatment, Krista removed the baby from her home with defendant. On February 17, Krista reported the baby's injury to a supervisor at the Children's Services Division, who reported it to the Klamath Falls Police Department. The baby was taken into protective custody, and an investigation was launched.

On February 23, 1995, defendant contacted Krista by telephone and confessed to injuring the baby. He admitted that he had bruised the baby's chest and back in early February and that he had caused the baby's fractured leg when he removed her from the crib, but claimed it was an accident. He stated, "I caused the bruises on the baby because I don't know my own strength." Defendant further said that "babies are so hard to understand. They are so frustrating." When asked specifically about his daughter's leg, defendant answered that, "when he entered the room, the baby's leg was twisted and stuck in the crib" and that he just "yanked it out." He further stated that, "because he didn't hear a crack, he thought that the child's leg was not injured despite her screaming."

Defendant admitted to detectives from the Klamath Falls Police Department that he occasionally bruised his daughter, explaining that he "does not know his own strength." When asked if he may have pulled on his daughter's leg too hard, defendant answered, "I might have." He then admitted that it was possible that he had caused the fracture of the baby's leg and that she began to scream only after he had pulled her out of the crib. Defendant was arrested for criminal mistreatment and taken into custody. Defendant admitted having a problem with anger and frustration and abusing drugs.

At defendant's revocation hearing the court, *inter alia*, imposed as a new condition:

"You may not without prior written approval by the Court following the successful completion of a drug treatment program and anger management program and any other program directly related to counseling related to * * * your conduct towards children[,] father any child."

Defendant argues that the special condition infringes his fundamental right to procreate, in violation of Equal Protection Clause of the United States Constitution. He acknowledges that a state interest may be compelling enough to warrant the infringement of a fundamental right. He argues, however, that the infringement must be narrowly tailored to achieve the state's legitimate goals. *See State v. Martin*, 282 Or 583, 589, 580 P2d 536 (1978) (when fundamental right is involved, sentencing court has less discretion to impose conditions in conflict with the right). Defendant argues that the court was required to perform a less restrictive means analysis before imposing the condition, that it failed to do so, and that the record does not support the imposition of such a condition.

We disagree. In ordering the additional conditions of probation, the trial court looked at the facts of this case, defendant's background, his previous failure to comply with probation conditions, and the availability and appropriateness of alternative probation conditions. The court expressed its concern for the safety of any children defendant might conceive in the future in light of defendant's potential for violence associated with his anger and drug abuse problems. The court determined that defendant's record showed a pattern of abusive behavior that warranted a provision keeping defendant from young children, especially his own, at least until he completes extensive counseling for his acknowledged drug and anger problems.

The court did not impose a total ban on defendant's reproductive rights, and it explicitly retained the authority to modify or eliminate the condition if and when defendant has completed treatment. The condition provides potential victims with protection from future injury and interferes with defendant's fundamental rights to a permissible degree. *See State v. Gilkey*, 111 Or App 303, 826 P2d 69 (1992) (upholding special condition of probation requiring the defendant to

receive written permission from court or probation officer before contacting his wife). We find no error.

Affirmed.