Argued and submitted November 19, 2015, remanded for resentencing,
otherwise affirmed January 21, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PAULA DIANE BELL,
*Defendant-Appellant.*

Lincoln County Circuit Court
131798; A156129

366 P3d 756

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant pleaded guilty to three counts of first-degree theft, ORS 164.055, two counts of first-degree official misconduct, ORS 162.415, and two counts of tampering with physical evidence, ORS 162.295. On appeal, defendant challenges two special conditions of probation, ORS 137.540(2), imposed by the trial court: (1) a spending restriction prohibiting her from spending more than $250 on nonordinary household items without permission and (2) a geographic restriction precluding her from leaving Lincoln County without permission. Defendant contends that the challenged conditions are not reasonably related to the crimes of conviction or the purposes of probation. Accordingly, defendant asks that we strike the conditions from the judgment. Reviewing the conditions of probation for legal error, *State v. Phillips*, 206 Or App 90, 97, 135 P3d 461, *rev den*, 341 Or 548 (2006), we affirm the spending condition and conclude that the geographic condition is invalid, and remand for further proceedings.

The pertinent facts are undisputed. Defendant worked as an evidence technician with the Oregon State Police (OSP) for several years, which gave her access to evidence facilities in Newport, Tillamook, and McMinnville. At some point, defendant began taking money from OSP evidence lockers to sustain a gambling addiction, a practice that she carried on for well over a year. Defendant sometimes transferred money from one evidence facility to another to cover for the money she had taken. Eventually, she was asked to remove cash from specific evidence lockers for disbursement in several criminal cases. Unable to comply with the request, she instead attempted to cover up her theft by staging a burglary at the evidence facility. During the investigation of the break-in, defendant confessed that she had taken the money and spent it at various casinos throughout the state.

As a result, defendant pleaded guilty to charges of theft, official misconduct, and tampering with physical evidence. The trial court ordered defendant to pay $51,557.69 in restitution[1] and sentenced her to 18 months' imprisonment

---

[1] The record reflects that defendant spent all of the stolen money and was unable to pay the full restitution amount at the time of sentencing.

and five years' probation. The trial court imposed the general conditions of probation under ORS 137.540(1), as well as several special conditions under ORS 137.540(2). In relevant part, the special conditions restricted defendant as follows:

> "Do not enter any establishment that has gambling including, but not limited to, casinos, bars/restaurants where video gambling machines or like devices are in place. This prohibition is not intended to extend to retailers who sell lottery tickets ancillary to their primary business.

> "Do not participate in any type of gambling activities, including but not limited to the purchase of lottery tickets and bingo.

> "Not participate in any on-line gambling or visit any such gambling site.

> "* * * * *

> "Pay all restitution ordered by the Court.

> *"Until all restitution is paid in full, Defendant will not leave Lincoln County without the written permission of a probation officer or of the Court.*

> "* * * * *

> *"Defendant may not expend any sum greater than $250.00 without permission from her Probation Officer unless it is for ordinary household expenses. 'Ordinary household expenditures' will be determined by the sound discretion of her Probation Officer."*

(Emphases added.)

At the sentencing hearing, defendant objected to the special conditions highlighted above. Regarding the spending restriction, defendant argued that it was "unduly restrictive," and she expressed doubts about whether people "can actually live in a household with those kind[s] of restrictions." Defendant also questioned the restriction's enforceability, noting that it would be difficult to distinguish household expenses and other expenses. The court explained that the spending restriction served an accountability purpose, stating:

"The intent of this is that there [is] not, if you will, cash income that she's receiving that is not accounted for going towards restitution. What would be appalling, if you will, is if she fell back into this and is gambling again and using what resources she has in that manner instead of paying restitution.

"And I don't—it's six months into her probation I don't want that to be found out. Again, this is going to require some accounting on the part of her and her probation officer. I'm not prohibiting any expense, she's just going to have to disclose it to her probation officer and the—

"* * * * *

"—purpose is, so we don't have large sums of money going out and nobody knowing about it.

"* * * * *

"* * * I find it reasonably related to the crimes in that which is represented to the Court as the motivation for her commission of these crimes."

Defendant then questioned the need for a separate spending restriction given that the court also imposed—and defendant did not contest—special conditions that required her to pay restitution and prohibited her from gambling or frequenting gambling establishments. Defendant alleged that, because she was required to make monthly restitution payments, the court also had a "recourse should she fail to pay the restitution or should she get back into gambling." On that point, the court responded,

"Again, it's because of her conduct here. And, quite frankly, her * * * successful efforts to conceal her activities over a long period of time, [and the] position of trust that she was in.

"I don't want her ever to be in such a position of trust where she's able to violate it in the same manner that she did that brings her before the Court here."

As to the geographic restriction, defendant argued that it was impractical and "improper to restrict her freedom of travel within the state." The court explained that it was imposing the restriction so that defendant would be

required to justify her travel and be held accountable for it. The court noted that there are costs associated with travel and wondered, "Why [is she] making trips to Pendleton and why [is she] making trips to Portland and other parts of the State if she can't afford to pay restitution[?]" Ultimately, the court clarified, "It's not that she can't do it. She just, first, has to request permission of her probation officer and justify, if you will, the reasons for thus requiring her to travel."

On appeal, defendant reiterates her objection to both conditions and requests that we strike them from the judgment because they "are not reasonably related to the crime of conviction, do not further the goals of probation, and unreasonably conflict with defendant's fundamental liberty[.]" Defendant contends that the court's authority to impose restrictive conditions is limited and argues that the court cannot impose conditions that are more restrictive than necessary, especially when a person's fundamental rights are at issue. Here, defendant claims that her fundamental right to travel and her right to free speech and association require that we scrutinize the trial court's decision to impose such restrictive conditions.

Before addressing the validity of each condition, we begin with an overview of the legal standards that govern our analysis in this case. Under ORS 137.540(2),

> "[i]n addition to the general conditions, the court may impose any special conditions of probation that are *reasonably related* to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both * * *."

(Emphasis added.) A court has wide discretion to impose probation conditions, but "a probation condition that is more restrictive than necessary to achieve the goals of probation is invalid." *State v. Donahue*, 243 Or App 520, 526, 259 P3d 981 (2011) (citing *State v. Hitesman/Page*, 113 Or App 356, 362, 833 P2d 306, *rev den*, 314 Or 574 (1992)). Furthermore, whenever a defendant's fundamental rights are implicated, the court has less discretion to impose conditions that infringe upon those rights. *Donahue*, 243 Or App at 526. On appellate review, a court can assess whether a defendant's

probation conditions comply with the standards outlined above "only if the sentencing court makes a record." *State v. Martin,* 282 Or 583, 589, 580 P2d 536 (1978); *see also State v. Gaskill,* 250 Or App 100, 103, 279 P3d 275 (2012) ("A trial court must establish a factual record to support its imposition of special conditions."). "Such a record need not be exhaustive, and often the facts brought out in the criminal trial will themselves be an adequate record to show that the conditions of probation are appropriate." *Martin,* 282 Or at 589. We consider each probation condition in turn.

With regard to the spending restriction, defendant argues that the condition is overly restrictive and infringes on her fundamental right to expression and free speech because those rights are "often expressed through personal property and purchases."[2] She also contends that the restriction is not reasonably related to her crimes, because those crimes were motivated by gambling, not spending. Furthermore, defendant contends that the spending restriction is not reasonably related to the goals of probation because it does not ensure that she pays restitution any more than the restitution order already does.

Conversely, the state argues that the spending condition is reasonably related to defendant's crimes and to the protection of the public because "it aims to require defendant to account for any extraordinary expenditures so that she does not gamble it away in secret, but pays it toward her restitution." The state points to the court's concern about how successfully defendant was able to conceal her thefts and gambling. Thus, the state argues that the restriction is reasonable because it helps to keep defendant accountable and does not prohibit any expenditure outright. We agree with the state.

In this case, there is a clear relationship between the spending restriction and defendant's criminal activities and the purposes of probation. Once more, the spending restriction states:

---

[2] Defendant raises the constitutional argument for the first time on appeal. Because the argument is not preserved, we do not address it further. *See State v. Maack,* 270 Or App 400, 410 n 3, 348 P3d 265, *rev den,* 357 Or 743 (2015) (declining to consider defendant's unpreserved "fundamental right" argument).

"Defendant may not expend any sum greater than $250.00 without permission from her Probation Officer unless it is for ordinary household expenses. 'Ordinary household expenditures' will be determined by the sound discretion of her Probation Officer."[3]

We are not persuaded by defendant's contention that the spending restriction is unnecessary, given the court's other, more tailored conditions of probation. We recently explained that "we will not hold that a probation condition is invalid simply because we can posit an alternative, 'more narrowly tailored' condition." *State v. Maack*, 270 Or App 400, 411, 348 P3d 265, *rev den*, 357 Or 743 (2015) ("[T]he question for us is whether the probation condition restricts the defendant's behavior to a permissible degree in light of its reasonable relationship to the purposes of probation." (Internal quotation marks and citations omitted.)). Nor are we required to engage in a "less-restrictive-means analysis." *Donahue*, 243 Or App at 527 (citing *State v. Kline*, 155 Or App 96, 100, 963 P2d 697 (1998)).

Here, the court was concerned that defendant had been able to hide her theft without anyone noticing, in part, because she had been trusted with little oversight. By imposing a spending restriction, the court intended to monitor defendant to (1) make it less likely that she could relapse into gambling without anyone noticing and (2) ensure that she pay restitution. The court suggested that, without the oversight provided by the spending restriction, defendant could have cash income coming in, presumably through gambling or some other means, which she could then spend on things other than paying restitution—all without her probation officer's knowledge. Given defendant's history of deception and her admitted gambling addiction, the court could properly conclude that monitoring or limiting defendant's spending was warranted to ensure her compliance with the other conditions of her probation (*i.e.*, no gambling

---

[3] We recognize that the court only prohibited those expenditures over $250 made without permission. However, the court may delay or withhold permission from defendant. Thus, our analysis takes into account that the court may delay or deny permission to defendant, thereby restricting her expenditures over $250 outright.

and payment of restitution).[4] Thus, while limiting defendant's extraordinary expenditures over $250 is restrictive, we cannot conclude that it is more restrictive than necessary in light of the nature of defendant's crimes and gambling addiction, the lengths she went to in order to conceal them, and the significant amount of restitution she must pay back. Therefore, we conclude that, on this record, the spending restriction is valid.

Next, we address the geographic restriction. Defendant first argues that the restriction is not reasonably related to the crimes for which she was convicted, since none of her crimes—theft, official misconduct, and evidence tampering—have a mobility or travel element. That is, defendant contends that her crimes were not motivated by her travel or access to other parts of the state. Second, defendant argues that the geographic restriction is not reasonably related to the goals of probation, including the goal that she pay restitution. According to defendant, that restriction is not necessary to ensure that she pays the restitution amount because she is already subject to an enforceable restitution order. Third, defendant argues that the travel restriction is too broad and that the trial court could have imposed a more narrowly tailored geographic restriction, such as one prohibiting her from traveling specifically to gambling establishments (though she points out that such a prohibition is arguably covered by the "no gambling" restriction). Finally, defendant contends that, because the geographic restriction infringes on her fundamental right to travel, there must be a stronger nexus between the restriction and the crimes defendant committed.

In contrast, the state argues that the geographic restriction is reasonably related to the crimes of conviction and the goals of probation. In particular, the state argues

---

[4] Because defendant was unable to pay the restitution amount at the hearing, we infer that the court had an interest in ensuring that any cash income or expenditure was accounted for and factored into defendant's restitution payment schedule. ORS 137.106(4)(a) provides, in relevant part:

"If the court finds that the defendant is unable to pay [restitution], the court may establish or allow an appropriate supervising authority to establish a payment schedule, taking into consideration the financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant. The supervising authority shall be authorized to modify any payment schedule * * *."

that the condition is reasonably related to the crimes of conviction "because defendant stole money from multiple locations to feed her gambling addiction, and spent that money at different casinos around the state," and that it is reasonably related to the goals of probation "because it ensure[s] that she [does] not make unnecessary expenditures and [will] eventually pay the restitution." The state maintains that the condition is not overly restrictive because it does not prohibit defendant from traveling altogether, but rather simply requires that she first obtain permission. Finally, the state argues that the court could have imposed even greater restrictions, including restricting defendant to her residence.

In the past, we have consistently struck down broad geographic restrictions. For instance, in *State v. Jacobs*, 71 Or App 560, 692 P2d 1387 (1984), we struck a special condition that prohibited the defendant, on probation for burglary, from residing in Troutdale because of his volatile relationship with a particular neighborhood. We held that the condition should have been more narrowly drawn; the defendant's history with his immediate neighbors did not justify prohibiting residency anywhere in Troutdale. *Id.* at 564. Similarly, in *State v. Ferre*, 84 Or App 459, 734 P2d 888 (1987), we struck down a geographic restriction that prevented the defendant from entering Coos County without the court's permission. The victims of the defendant's burglary, assault, and harassment in that case lived in North Bend, and the court imposed that restriction to ensure their safety from the defendant, who planned to move to Eugene. *Id.* at 461-62. We held that, although the restriction promoted the purpose of ensuring the victims' physical safety, it was "broader than necessary to accomplish that purpose" given the lack of evidence that the defendant posed any danger to anyone in Coos County outside of North Bend. *Id.* at 462.[5]

---

[5] However, we have upheld restrictions that were narrow in scope and purpose. In *Donahue*, the defendant was arrested and convicted of prostitution on 82nd Avenue in Portland. 243 Or App at 522. As a condition of her probation, the court prohibited her from entering specific portions between 82nd Avenue and Sandy Boulevard, a "high vice" area, but allowed her to travel through the area by car or public transit. *Id.* We upheld that geographic restriction because it was "reasonably related to the protection of the public or her reformation" and the court could reasonably have concluded that "it would prevent her from reengaging in the offending conduct and at the same time protect the public from further acts of prostitution." *Id.* at 526.

In this case, the condition preventing defendant from leaving Lincoln County is not only too broad, but also fails to meet the "reasonably related" standard.[6] Once again, that condition states:

> "Until all restitution is paid in full, Defendant will not leave Lincoln County without the written permission of a probation officer or of the Court."

The court's reasoning for imposing the condition was, in essence, that defendant was spending too much money traveling to other parts of the state, which would affect her ability to pay restitution. That is, the court restricted defendant from leaving Lincoln County unless she could justify the expense of such trips and to prioritize paying restitution. However, assuming that one of the goals of defendant's probation is for her to pay the full restitution amount, the geographic restriction is more burdensome than necessary to achieve that goal, especially given the record in this case. The record does not reflect why defendant's travel (or potential travel) would prevent her from making restitution payments. The court inferred that defendant's trips outside Lincoln County would prevent her from paying restitution—but there is nothing in the record that speaks to the frequency, cost, or necessity of those trips to support that inference. Moreover, we already have upheld the restriction on defendant's spending. Under those circumstances, we cannot discern how the additional restriction on defendant's travel outside Lincoln County would further facilitate the payment of restitution. *Cf. State v. Hurita*, 276 Or App 58, 366 P3d 754 (2016) (striking down restriction on travel where other conditions of probation served the stated purpose for the condition, "render[ing] superfluous the additional geographic limitations").

Furthermore, there is no nexus between the geographic restriction and defendant's crimes of theft, misconduct,

---

[6] We recognize that the geographic restriction allows defendant to leave Lincoln County if she has permission. However, defendant may nevertheless be confined to Lincoln County during the period of time that it takes to obtain permission to leave, and she might be confined to Lincoln County altogether if permission to leave is withheld. Thus, we analyze the validity of this condition to the extent that it poses a restraint on defendant's freedom to travel at any indeterminate point of time. *Cf. Ferre*, 84 Or App at 461-62 (applying no significance to the "with permission" exception).

and evidence tampering. The state assumes that there was such a nexus, given that defendant committed the crimes at different evidence facilities and spent the money at various casinos, but the location of defendant's crimes and gambling did not appear to factor into the court's decision to impose the restriction. Thus, because the record in this case is insufficient to demonstrate a reasonable relationship between the geographic restriction and defendant's crimes or the purposes of probation, it is invalid.

Remanded for resentencing; otherwise affirmed.